James F. Lewin (SBN 140268)
Renee M. Parker (SBN 256851)
THE MORTGAGE LAW FIRM, PLC
27368 Via Industria, Ste 201
Temecula, California 92590
Telephone: (619) 465-8200
Facsimile: (951) 225-4073
E-Mail: Renee.Parker@mtglawfirm.com
TMLF File No. 167283

Attorneys for Objecting Secured Creditor, REAL TIME RESOLUTIONS, INC. as agent for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS MASTER TRUST, REVOLVING HOME EQUITY LOAN ASSET BACKED NOTES, SERIES 2004-M

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA (SAN JOSE DIVISION)

| | |
|---|---|
| In re:<br><br>DONALD CHARLES SCHWARTZ ,<br>dba LAW OFFICES OF DONALD C. SCHWARTZ ,<br><br>        Debtor. | Case No.  23-50372<br><br>OBJECTION TO CONFIRMATION OF PLAN<br><br>341(a) Hearing:<br>Date:    May 22, 2023<br>Time:    9:30 a.m.<br><br>Confirmation Hearing:<br>Date:    June 8, 2023<br>Time:    1:30 p.m.<br>Ctrm:    11<br>Place:    280 S. First Street<br>            San Jose, CA 95113 |

      Secured Creditor, REAL TIME RESOLUTIONS, INC. as agent for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS MASTER TRUST, REVOLVING HOME EQUITY LOAN ASSET BACKED NOTES, SERIES 2004-M ("Creditor")

Case: 23-50372    Doc# 21    Filed: 05/19/23    Entered: 05/19/23 16:17:43    Page 1 of 32

hereby objects to confirmation of the Chapter 13 plan filed by DONALD CHARLES SCHWARTZ ("Debtor"). In support of its objection, Creditor alleges as follows:

1. On April 6, 2023, Debtor filed the instant voluntary petition under Chapter 13 of the Bankruptcy Code in the Northern District of California as Case No. 23-50372.

2. In the prior bankruptcy case, filed by Debtor in the Northern District of California as Case No. 17-50805 ("Prior Bankruptcy"), Debtor objected to Creditor's proof of claim as to the real property commonly known as and located at 250 MIGUES MOUNTAIN LANE, APTOS, CA 95003 (hereinafter the "Property"). Debtor and Creditor (hereinafter collectively referenced as the "Parties") resolved the claim objection by means of an "Amended Stipulated Agreement" filed therein on or about February 26, 2019 as Docket No. 132 (the "Stipulation") and an Order Approving Amended Stipulated Agreement was entered on or about February 27, 2019 as Docket No. 134 therein (the "Stipulated Order"). A true and correct copy of the Stipulation and the Order are attached hereto as **Exhibit A** and incorporated herein by reference.

3. In the Stipulation the Parties agreed to the following terms, in part, which changed only a portion of the Note, but otherwise the Parties agreed that the Note and Deed of Trust remained in full force and effect (Stipulation at ¶ 3):

The Note dated July 1, 2004 shall be modified to reflect the following changes:

a. The Unpaid Principal Balance ("UPB") shall be adjusted to $415,907.07

i. $3,000.00 of the UPB shall be paid at the sum of $250.00 per month for twelve (12) months, from February 25, 2019 through January 25, 2020, without interest;

ii. $258,016.40 of the UPB shall be paid at the sum of $2,621.61 per month for 129 months, starting February 25, 2020 through November 25, 2030, at an interest rate of 5.25% interest;

iii. $154,890.67 shall be paid on or before December 25, 2030 as a balloon payment. All other balances due and owing, subject to the terms and conditions of this Stipulation, shall also become payable in full on or before December 25, 2030;

iv. Debtor acknowledges that the Note and Deed of Trust will be deemed past-due throughout the entire period of time stated in this Stipulation;

v. Debtor agrees that Creditor shall not send monthly statements to Debtor.

4.     Debtor defaulted under the Stipulation on multiple occasions, and was contacted by e-mail several times between 2019-2021 to provide reminders to tender payments. However, Debtor was not notified of a default by written letter as required under the Stipulation at Para. 12. Accordingly, the Stipulation is still the controlling document.

5.     Debtor filed a motion to reopen the Prior Bankruptcy specifically for the purpose of "Vacating Orders Entered at Docket Nos. 115 and 153" (Prior Bankruptcy at Docket No. 170).

6.     Thereafter, Debtor filed, pro se, in the Prior Bankruptcy at Docket No. 173 a motion to "Set Aside, Modify or Clarify" the "settlement matter …entered on the record September 12, 2018 and purportedly followed up by stipulation and order" (Prior Bankruptcy, Dkt. 173 at Pg. 1) (hereinafter "Motion to Vacate Order"). **At no time and at no point did Debtor seek to set aside the Stipulation and Order entered into with Creditor by reference, and the circumstances described in the Motion to Vacate Order do not match those of the Stipulation.**

7.     In the Declaration in support of the Motion to Vacate Order, filed in the Prior Bankruptcy at Docket No. 176, Debtor stated he was diagnosed with dementia as being one of several bases for vacating the Senior Lienholder's agreement (*see*, Pg. 3:14), the lack of statements from the lienholder being another (Debtor agreed to forego monthly statements from Creditor).

8.     After opposition and replies for the Motion to Vacate Order were considered, the Court denied Debtor's Motion to Vacate Order (Prior Bankruptcy, Dkt. 188).

9.     Thereafter Debtor filed an appeal in the Bankruptcy Appellate Panel ("BAP"), in which the decision of the Bankruptcy Court was upheld, and Debtor then filed another appeal in the Northern District of California as Case No. 20-cv-07680-VC (the "Appeal"). Debtor did not name Creditor or reference Creditor's Stipulation in the Appeal or even in the BAP case. Judgment was entered against Debtor, and the Bankruptcy Court's ruling on the Motion to Vacate Order was again upheld. *See*, Appeal, Docket No. 225 for the Judgment and No. 226 for the Order, both entered February 28, 2022. It is not believed that Debtor pursued any further appeal. True and correct copies of the Judgment and Order in the Appeal are attached hereto as **Exhibit B** and incorporated by reference.

3

10. Debtor stated to counsel for Creditor that Creditor's Stipulation was subject to the Appeal by e-mail on or about March 23, 2021 as the reason he would not pay Creditor under the terms of the Stipulation, even though the information in the Appeal did not reference it or match the circumstances or content of the Stipulation. A declaration can be made available upon request.

11. Debtor's Petition indicates the Property is not Debtor's primary residence (Dkt. No. 1, Petition, Part 1, ¶ 5). Creditor was not listed on the Creditor Matrix filed with the Petition.

12. Debtor does not list a rental or lease agreement for the location he states is his primary residence (Dkt. 13, Sched. G), and does not provide for payment of rent for the primary residence (Dkt. 13, Sched. J) – in fact he only provides for the Property. Debtor similarly claims no income from the Property on Schedule I (Dkt. 13) and claims no "expenses of people other than yourself and your dependents" (by checking the "No" box) on Schedule J. It is unclear where Debtor actually lives (noting Debtor used an entirely different primary residence address on the Petition in the Prior Bankruptcy, stating he lived in Santa Cruz then).

13. Debtor's Schedule A states the market value of the Property is "Unknown" and indicated it is pending an appraisal (Dkt. 13). Despite Debtor's knowledge of Creditor, Creditor is not listed in Sched. D (*Id.*).

14. Debtor states the lienholder senior to Creditor, listed as "Shellpoint – Bank of New York" ("Senior Lienholder") on Schedule D, was owed $1,348,730.66 on the date of filing; the Senior Lienholder has not yet filed a proof of claim.

15. Creditor obtained a Broker's Price Opinion ("BPO") attached hereto as **Exhibit C** and incorporated by reference, which Creditor acknowledges lacks evidentiary value but is used to allow the Court to make an informed decision solely for purposes of this objection and not to prove the actual value of the Property, showing a market value for the Property of $2,100,000.00. Creditor reasonably believes its lien is wholly secured based on this information.

16. Debtor states he is self-employed (Dkt. 13, Sched. I) and is practicing law.

17.     Debtor's monthly disposable income is $457.58 (Dkt. 13, Sched. J); this is without payment of rent for his primary residence or payment of monthly post-petition maintenance installments to Creditor (*Id*.).

18.     Debtor allocates a blanket amount of $4,924.09 for post-petition maintenance payments the Property, which appears to be only to the Senior Lienholder (*Id*.).

19.     On May 4, 2023 Debtor filed a Chapter 13 Plan at Docket No. 14 (the "Plan").

20.     Despite monthly disposable income of $457.58, Debtor states he will pay $2,500.00 per month into the Plan for Months 1-6, then $5,500.00 for Months 7-60 without any explanation of how he will have these funds available or where the money is coming from (Dkt. 14, §2). There is noting noted on Schedule I to show Debtor anticipates a future increase in income (Dkt. 13).

21.     Debtor improperly and incorrectly states the 'junior lien', which is believed to be Creditor's lien despite being labeled as "Shellpoint – Bank of New York", is to be avoided as wholly unsecured <u>despite listing a value of "Unknown" in Schedule A</u> (Plan, §5 at Class 4); Creditor does not waive this defect in notice of Debtor's intent to avoid Creditor's lien.

**I          LACK OF ADEQUATE FUNDING AND ADEQUATE PROTECTION**

Creditor objects to the Plan pursuant to 11 U.S.C. § 1325(a)(l), 1322(b)(3) and §1322(b)(5) as the Plan fails to provide for the curing of the default and/or the required maintenance payments on Creditor's secured claim which final payment is due after the proposed final payment under the Plan. Debtor's Plan fails to provide for ongoing mortgage payments to Creditor under its lien, and fails to properly address the pre-petition arrears owed to Creditor. Further, as set forth herein, Debtor appears to be unable to value or cramdown Creditor's Deed of Trust in light of the equity existing in the Property which protects Creditor.

Creditor further objects to the Plan as it fails to satisfy the full value requirement of 11 U.S.C. §1325(a)(5)(B)(ii). The Plan fails to pay Creditor's pre-petition arrears, when, in fact, approximately $104,970.01[1] in arrears are due and owing under the Stipulation.

---

[1] Creditor is in the process of filing its proof of claim, and any amounts therein shall control over the amounts stated in this objection.

Under 11 U.S.C. § 1325(a)(5) the Court shall confirm a Plan only if as to each secured claim the claim holder accepts the Plan and the Plan provides for distribution to that creditor in an amount not less than the value of the allowed secured claim. The Plan does not provide for payment of Creditor's secured claim, appears to improperly avoid the lien, and Creditor does not accept the Plan. Therefore, the Plan should not be confirmed.

## II      IMPROPER AVOIDANCE OF CREDITOR'S LIEN

Even if Debtor lives rent-free in a different location than the Property, Debtor's Schedule D states the Senior Lienholder has a total claim of $1,348,730.66 (Dkt. 13) and Creditor reasonably believes the market value of the Property was at or around $2,100,000.00 based on the BPO. Accordingly, Creditor's lien cannot be avoided and the Plan cannot be confirmed.

## III      LACK OF FEASIBILITY

The burden is completely on Debtor to show reorganization is in prospect. 11 U.S.C. § 362(g); *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375-76 (1988). Under the standard set by the Supreme Court in *Timbers*, in order to establish that reorganization is in prospect Debtor has to demonstrate a "reasonable possibility of a successful reorganization within a reasonable time." *Id*. At 376. Debtor is required to do more than merely assert he can reorganize if only given the opportunity to meet the *Timbers* standard. See e.g., *Am. State Bank v. Grand Sports, Inc. (In re Grand Sports, Inc.)*, 86 B.R. 971, 975 (Bankr.N.D.Ill 1988). Under 11 U.S.C. § 1325(a)(6) the Court shall confirm the Plan only if the Debtor demonstrates an ability to make all payments under the Plan and otherwise perform on the provisions of the Plan. In order to keep creditors "at bay" a debtor must have a present and future ability to make payments under the terms of a confirmable plan. *In re Street*, 17 B.R. 787, 788 (E.D.Ill 1982). *See also*, *In re Sun Valley Newspapers*, 171 B.R. 71, 75 (9th Cir.BAP 1994)

Debtor's disposable income, without payment of rent for his "primary residence" is $ 457.58 (Dkt. 13, Sched. J); this amount could be lower if Debtor is actually required to pay rent. Debtor would further be required to reduce the monthly disposable income on Schedule J to maintain

OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

Creditor's monthly post-petition installment payments of $2,621.61 under the Stipulation, resulting in negative income each month ($457.58 - $2,621.61 = <$2,164.03>).

Debtor states he owes the Senior Lienholder $265,896.00 in pre-petition arrears, for which he will only tender $4,000.00 per month starting in the 7th month of the Plan term (Dkt. 14, § 5, Class 1) and will further tender $4,924.09 for post-petition payments (Dkt. 13, Sched. J). There is already a feasibility issue with the senior lien because the amount listed as arrears would be $4,757.33 per month if spread over 54 months ($256,896.00/54 months = $4,757.33). Debtor only proposes to pay $4,000.00 per month for 54 months, which has a total of $216,000.00.

Debtor is also required to pay Creditor's pre-petition arrears of approximately $104,970.01, which would require an additional payment of $1,749.50 over 60 months ($104,970.01/60 months = $1,749.50).

Debtor proposes to pay only $312,000.00 into the Plan over 60 months using inflated income (Dkt. 14, § 2). Debtor cannot propose a feasible Plan when the monthly disposable income is actually negative when adjusted for Creditor's post-petition installments.

## IV      THE PLAN CREATES PREJUDICIAL DELAY TO CREDITOR

The Plan further states that Debtor does not intend to take *any* action for payment to Creditor because Debtor intends to avoid the lien despite improper notice to Creditor and a failure to rebut that equity exists to wholly secure Creditor's lien (Dkt. 14, §5 at Class 4). Under 11 U.S.C. § 1307(c)(1) Debtor's Plan proposes a prejudicial delay to creditors, and to Creditor specifically. Creditor objects to this treatment of its claim.

## V      CONCLUSION

As the Supreme Court held long ago, a Bankruptcy Court, "is not bound to clog its docket with visionary or impractical schemes for resuscitation." *Tenn. Pub. Co. v. Am. Nat. Ban*k, 299 U.S. 28, 22 (1936). *See also*, *Jodway v. Fifth Third Bank (In re Jodway)*, (6th Cir. Jan 5, 2018), 2018 WL 300438. "[T]he court is under no obligation to permit exercises in futility." *Jodway* at *1.

"With respect to secured creditors, § 1325(a)(5) requires generally that a chapter 13 plan must provide one of three alternative treatments: (1) treatment to which the secured creditor

OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

consents; (2) retention of collateral by the debtor with a stream of payments to the secured creditor; or (3) surrender of the collateral to the secured creditor." *In re Trejos*, 374 B.R. 210, 214 (B.A.P. 9th Cir. 2007). Debtor's Plan proposes none of these, and cannot be confirmed.

Any Chapter 13 Plan proposed by Debtor must provide for and eliminate the objections specified to provide adequate protection to Creditor.

Creditor reserves the right to raise other objections at a later time.

WHEREFORE, Creditor prays as follows:

1.   That confirmation of the proposed Plan be denied; and

2.   That Debtor's case be dismissed under 11 U.S.C. § 1307(c)(1) due to Debtor's prejudicial delay to creditors in an inability to timely propose a confirmable plan under 11 U.S.C. § 1324(b); and

3.   For award of fees and costs incurred herein; and

4.   For such other and further relief as this Court deems proper.

DATED:   May 19, 2023

Respectfully submitted,
THE MORTGAGE LAW FIRM, PLC

BY:   /s/ Renee M. Parker
Renee M. Parker, Esq.,
Attorneys for REAL TIME RESOLUTIONS, INC.

Case: 23-50372   Doc# 21   Filed: 05/19/23   Entered: 05/19/23 16:17:43   Page 8 of 32

EXHIBIT "A"

1  Renee M. Parker (SBN 256851)
   James F. Lewin (SBN 140268)
2  THE MORTGAGE LAW FIRM, PLC
   27455 Tierra Alta Way, Ste. B
3  Temecula, CA 92590
   Telephone: (619) 465-8200
4  Facsimile:  (951) 308-0055
   Renee.Parker@mtglawfirm.com
5  TMFL File No. 144173

6

7  Attorneys for REAL TIME RESOLUTIONS, INC. AS AGENT FOR THE BANK OF NEW YORK
   MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE
8  BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS MASTER
   TRUST, REVOLVING HOME EQUITY LOAN ASSET BACKED NOTES, SERIES 2004-M

9              UNITED STATES BANKRUPTCY COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11
   | In re: | Case No. 17-50805 |
12 | | |
   | DONALD SCHWARTZ, | Chapter 13 |
13 | | |
   | Debtor. | **AMENDED** |
14 | | **STIPULATED AGREEMENT** |
15

16     This Stipulation is entered into by and between Creditor, REAL TIME RESOLUTIONS,

17 INC. as agent for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS

18 SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE

19 CERTIFICATEHOLDERS OF CWABS MASTER TRUST, REVOLVING HOME EQUITY LOAN

20 ASSET BACKED NOTES, SERIES 2004-M ("Creditor" collectively), by and through its attorneys,

21 and Debtor DONALD SCHWARTZ  ("Debtor"), by and through his attorney of record. Hereinafter

22 this document shall be referenced as the "Stipulation" and  Debtor and Creditor shall be collectively

23 referenced as the "Parties."

24     The Parties have agreed to resolution of Debtor's OBJECTION TO CLAIM NO. 8-1 BY

25 REAL TIME RESOLUTIONS, INC. AS AGENT FOR THE BANK OF NEW YORK MELLON

26 FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS

27 TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS MASTER TRUST, REVOLVING

28

HOME EQUITY LOAN ASSET BACKED NOTES, SERIES 2004-M (the "Claim Objection") and Creditor's Opposition to the Objection (the "Opposition").

The Parties have further agreed that this Stipulation shall amend the LIENS OF THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESOR TRUSTEE TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE ON BEHALF OF THE CERTIFICATEHOLDERS OF THE CWABS MASTER TRUST, REVOLVING HOME EQUITY LOAN ASSET BACKED NOTES, SERIES 2004-M, ROBERT A.D. SCHWARTZ AND DONNA VIARO filed as **Docket No. 115** herein (the "Valuation Order"), only to the extent the Valuation Order applies to Creditor; this Stipulation shall not alter or amend the Valuation Order as to any other party named therein.

## STIPULATION

The Parties hereby stipulate and agree as follows:

1. This Stipulation resolves the Claim Objection and the Opposition thereto;

2. Upon entry of an Order by this Court, and without further action by any of the Parties, the Valuation Order shall cease to be effective only as to the Deed of Trust recorded with the Office of the Santa Cruz County Recorder's on or around July 14, 2004 as Instrument No. 2004-0050827[1] (hereinafter the "Deed of Trust"), and that Deed of Trust shall remain and be a secured lien, in the lien position held at the time of recordation and perfection, against the real property commonly known as 250 MIGUES MOUNTAIN LANE, APTOS, CA 95003 (hereinafter the "Property").

3. The Note dated July 1, 2004 shall be modified to reflect the following changes:
   a. The Unpaid Principal Balance ("UPB") shall be adjusted to $415,907.07
      i. $3,000.00 of the UPB shall be paid at the sum of $250.00 per month for twelve (12) months, from February 25, 2019 through January 25, 2020, without interest;
      ii. $258,016.40 of the UPB shall be paid at the sum of $2,621.61 per month for 129 months, starting February 25, 2020 through November 25, 2030, at an interest rate of 5.25% interest;
      iii. $154,890.67 shall be paid on or before December 25, 2030 as a balloon payment. All other balances due and owing, subject to the terms and conditions of this Stipulation, shall also become payable in full on or before December 25, 2030;
      iv. Debtor acknowledges that the Note and Deed of Trust will be deemed past-due throughout the entire period of time stated in this Stipulation;
      v. Debtor agrees that Creditor shall not send monthly statements to Debtor;

---

[1] Note: the Valuation Order erroneously states Creditor's Deed of Trust was recorded February 4, 2015 as Instrument No. 2015-0004166.

Case: 17-50017   Doc# 131   Filed: 05/16/19   Entered: 05/16/19 16:15:41   Page 11 of 32

4. The Note and Deed of Trust shall remain unchanged, and shall be deemed to be in full force and effect, for any term and/or condition not specifically changed herein;

5. This Stipulation shall be deemed to supersede any confirmed or unconfirmed Chapter 13 Plan, inclusive of all amendments thereto, and is binding in all terms on any subsequent post-confirmation amendment to the Plan regardless of whether or not those amendments incorporate this Stipulation, and this Stipulation will control over any terms and conditions of any document that contains terms and conditions contradictory to the terms and conditions contained within this Stipulation;

6. Debtor agrees to immediately notify Creditor of any changes to his mailing address within ten (10) calendar days of the occurrence of such change, and that failure to do so will result in Debtor's waiver of the requirement to receive any notices required by this Stipulation;

7. The Parties agree that Debtor will be completely and fully responsible for payment of all taxes associated with the Property from the date of this Stipulation, including, but not limited to property taxes and/or any municipal and/or any other tax, and further agree that where Creditor receives notification that Debtor has failed to satisfy any single tax payment referenced herein, that Creditor may, at Creditor's option and in its own discretion, pay any tax payment referenced herein, and Creditor shall be entitled to demand reimbursement of same from Debtor, payable within thirty (30) days from the date Creditor sends written notification to Debtor, at the mailing address Debtor has provided to Creditor at the time the demand is sent;

8. The Parties agree that Debtor will be completely and fully responsible for payment of all Homeowners Association ("HOA") Dues and/or Assessments, if any, that are due and owing on, and going forward from, the date of this Stipulation;

9. Debtor must maintain ample liability coverage, plus adequate hazard and, if required, flood insurance coverage (as defined by the insurance industry standard for these terms), at his own expense, for the Property, subject to the terms and conditions stated in the Deed of Trust. Debtor further agrees that Creditor will be named as an additional loss payee under all applicable insurance policies for the Property until such time Creditor releases its lien in public record, and that Creditor shall be entitled to insurance proceeds, if any, pursuant to the Note and/or Deed of Trust;

Case: 17-50005   Doc# 131   Filed: 05/10/19   Entered: 05/10/19 16:10:41   Page 12 of 32

10.     In the event the Property is destroyed or damaged prior to complete satisfaction of the amounts due and owing under this Stipulation, Creditor shall be entitled to its full rights and compensation as a loss payee with respect to any insurance proceeds, up to the entire balance due and owing under the Note and Deed of Trust, and not this Stipulation, as of the date of loss;

11.     If, prior to complete satisfaction of the amounts due and owing under this Stipulation, Debtor sells, transfers, conveys, assigns, or otherwise takes any action that changes ownership of the Property to any other person or entity, whether in part or in whole, and whether or not it is to an entity in which the Debtor has or does not have any interests therein or rights thereto, and whether such transfer is voluntary or involuntary, and whether it occurs pursuant to any probate of a will or administration of trust, Creditor shall be entitled to payment the entire balance due and owing under the Note and Deed of Trust, and not this Stipulation, at the exact date and time the event occurs, transpires, or otherwise takes place, regardless of whether or not Creditor has knowledge of any sale, transfer, conveyance, assignment, or any other action that affects ownership of the Property;

12.     In the event Debtor defaults under any of the terms and conditions of this Stipulation, Creditor shall serve written notification to Debtor, at the mailing address Debtor has provided to Creditor at the time the written notification is sent. If Debtor is unable to provide credible evidence to rebut Creditor's claim of default within fourteen (14) days after the written notification is sent, Creditor shall immediately be entitled to the entire balance due and owing under the Note and Deed of Trust, and not this Stipulation;

13.     Creditor may accept any and all payments made pursuant to this Stipulation without prejudice to or waiver of any rights or remedies to which it would otherwise have been entitled under bankruptcy or non-bankruptcy law, and may, at Creditor's option and in its own discretion elect to not declare a default where an instance of default occurs, without prejudice to or waiver of any rights or remedies to which it would otherwise have been entitled or will be entitled in the event of any future default;

14.     The Parties agree that this stipulation shall be deemed to be jointly drafted by Debtor and Creditor, and shall not be construed against either Debtor or Creditor;

15.     The Parties agree that nothing in this stipulation shall be deemed to be a waiver of any bankruptcy or non-bankruptcy rights that each party can or will have or can or will pursue;

16.    This Stipulation shall be deemed to be jointly drafted by the Parties, and shall not be construed against either Creditor or Debtor;

17.    This Stipulation, and the terms and conditions contained herein, may only be modified, altered or otherwise changed by express written agreement of the Parties, and the agreement must also be executed by all Parties, or their agents, to be effective and binding;

18.    Each party to this Stipulation shall bear its own fees and costs incurred in connection with this Stipulation;

19.    The Parties agree that this Stipulation may be executed in counterparts, each of which shall be deemed an original, and such counterparts shall be deemed to constitute one and the same instrument;

20.    The Parties agree that any signature transmitted by facsimile or by any other scanned or electronic means by any party hereto shall be deemed to be a valid original signature for all purposes under this Stipulation;

21.    The Parties agree that Creditor will only implement the terms and conditions stated in the entirety of this Stipulation herein upon entry of a signed Order from the Court approving this Stipulation; and,

22.    The Parties request that the Court approve this Stipulation.

APPROVED AS TO FORM AND CONTENT, IT IS SO STIPULATED:

Dated: 2/21/2019*        By: _____

                                  DONALD SCHWARTZ, Debtor

Dated: 2/25/2019*        REAL TIME RESOLUTIONS, INC. as agent for THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS MASTER TRUST, REVOLVING HOME EQUITY LOAN ASSET BACKED NOTES, SERIES 2004-M

                                  By: _____

                                  Name: Veronica Gutierrez

                                  Its: _____

AGREED TO AS TO FORM AND CONTENT:

CENTRAL COAST BANKRUPTCY

Dated: 2/21/2019*                By: _____
                                     Jason Vogelpohl, Esq.,
                                     Attorneys for Debtor

THE MORTGAGE LAW FIRM, PLC

Dated: 2/25/2019*                By: _____
                                     Renee M. Parker, Esq.,

* Date changed via electronic permission

STIPULATED AGREEMENT
6 of 6



1  James F. Lewin (SBN 140268)
   Renee M. Parker (SBN 256851)

2  THE MORTGAGE LAW FIRM, PLC
   27455 Tierra Alta Way, Suite B

3  Temecula, California 92590
   Telephone: (619) 465-8200

4  Facsimile: (951) 308-0055
   Renee.parker@mtglawfirm.com

5  TMLF File No. 144173

6  Attorneys for Creditor,
   REAL TIME RESOLUTIONS, INC. as agent for

7  THE BANK OF NEW YORK MELLON FKA
   THE BANK OF NEW YORK, AS SUCCESSOR

8  TO JPMORGAN CHASE BANK, N.A., AS
   TRUSTEE FOR THE CERTIFICATEHOLDERS

9  OF CWABS MASTER TRUST, REVOLVING
   HOME EQUITY LOAN ASSET BACKED

10 NOTES, SERIES 2004-M

**The following constitutes the order of the Court.**
**Signed: February 27, 2019**

*M. Elaine Hammond*
_____
**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

11              UNITED STATES BANKRUPTCY COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13

14 In re:                              Case No. 17-50805

15 DONALD SCHWARTZ,                    Chapter 13

16              Debtor.                ORDER APPROVING AMENDED
                                       STIPULATED AGREEMENT
17
                                       [No Hearing]
18

19

20

21

22

23         The Amended Stipulated Agreement filed February 26, 2019 at Docket No. 132 is approved

24 and hereby made an order of this court.

25

26                         *** END OF ORDER***

27

28                                          1

COURT SERVICE LIST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

# EXHIBIT "B"

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re: DONALD CHARLES SCHWARTZ,

Appellant.

20-cv-07680-VC

**JUDGMENT**

For the reasons stated in the Court's January 21, 2022 order affirming the judgment of the bankruptcy court, Docket No. 18, the Court now enters judgment in favor of the appellee and against the appellant. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: January 21, 2022

VINCE CHHABRIA
United States District Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re: DONALD CHARLES SCHWARTZ,

Appellant.

Case No. 20-cv-07680-VC

**ORDER AFFIRMING THE
JUDGMENT OF THE BANKRUPTCY
COURT**

Re: Dkt. No. 12

The judgment of the bankruptcy court is affirmed. After a creditor objected to Appellant Donald Schwartz's Chapter 13 bankruptcy plan relating to his property, the parties reached a settlement. Counsel for the creditor announced the agreement's key terms in open court, including the total unpaid principal balance, the interest rate, the amount of the monthly payments, and the maturity date. The bankruptcy court noted that the "parties anticipate further documentation in the form a stipulation that will be approved by Court order." Schwartz also confirmed during the hearing that he agreed to the terms of the settlement. A stipulation followed less than one month later, providing that Schwartz would begin making payments on October 1, 2018. Notice of the stipulation was served on Schwartz the next day. The bankruptcy court then issued an order codifying the same.

Schwartz later filed a motion to set aside the settlement, arguing that the failure to state in open court the first date of his monthly payments rendered the agreement unenforceable. He also argued that his attorney lacked the power to bind him and that the COVID-19 pandemic vitiated the agreement. The bankruptcy court denied his motion.

Schwartz appeals the bankruptcy's court denial of his motion to set aside the settlement,

reiterating the same arguments he made below. For the same reasons offered by the bankruptcy court, his appeal lacks merit. That the parties failed to include the exact date that payments would begin when they first announced the settlement in open court does not, as Schwartz contends, render the agreement unenforceable. Schwartz acknowledged that he agreed to the key terms at the hearing. And all understood that a stipulation would follow, which in turn contained the date that payments would start. The record shows that a copy of the stipulation was served on Schwartz. In short, nothing suggests that the agreement lacked material terms rendering it unenforceable.

As for Schwartz's contention that his lawyer lacked the power to bind him, the record suggests otherwise. Schwartz attended the hearing at which the parties announced the agreement and personally confirmed that he agreed to the settlement. To the extent Schwartz contends that his lawyer lacked authority to agree to the stipulation that followed, he may pursue other avenues of relief.

Last and least, Schwartz's argument that the COVID-19 pandemic vitiates the entire agreement makes little sense. The parties entered their stipulation settling the matter on October 8, 2018, well over a year before the coronavirus spread globally.

The judgment of the bankruptcy court is affirmed.

**IT IS SO ORDERED.**

Dated: January 21, 2022

VINCE CHHABRIA
United States District Judge

# EXHIBIT "C"



# BROKER PRICE OPINION (BPO)



**File #:**
**Lender/Client:** Real Time Resolutions, Inc.
**Borrower:**
**Occupancy:** Unknown

**Subject Property Address:**
250 Migues Mountain Lane
Aptos, CA 95003
Santa Cruz County

| Inspection Date: 05/10/2023 | Completion Date: |
|---|---|
| **"AS-IS"** 90-120 Day Value | **Estimated Sale Price.....$2,100,000.00** **Suggested List Price.....$2,100,000.00** |
| **"AS-REPAIRED"** 90-120 Day Value | **Estimated Sale Price.....$2,100,000.00** **Suggested List Price.....$2,100,000.00** |
| **30 Day Quick Sale Value...$1,900,000.00** | |
| **Inspection Type: [x] Exterior ☐ Interior** | |



# RESIDENTIAL BROKER PRICE OPINION

| | | | |
|---|---|---|---|
| **Loan #** 250migues | **Inspection Date/Time** 5/10/2023 6:00:00 PM | | |
| **File #** | This BPO is the [X] Exterior [ ] Interior | | |
| **BPO #** 97270 | | | |

| | | | |
|---|---|---|---|
| PROPERTY ADDRESS: | 250 Migues Mountain Lane Aptos, CA 95003 | | |
| Subject Parcel # | 041-261-46 | BORROWER'S NAME: | |
| FIRM NAME: | Vylla Home, Inc. | COMPLETED BY: | Richard Diaz |
| PHONE NO: | (831) 247-9587 | FAX NO: | (408) 267-1358 |
| Email Address | richard.diaz@vylla.com | Broker / Agent Lic # | 01751023 |
| Broker distance to subject Property | 3.00 | Years of Experience | 17 |

## I. GENERAL MARKET CONDITIONS

| | | | | | | |
|---|---|---|---|---|---|---|
| Current market condition: | [ ] Declining | [X] Stable | [ ] Increasing | | | |
| Employment conditions: | [ ] Declining | [X] Stable | [ ] Increasing | | | |
| Market price of this type property has: | [ ] Decreased | | % in past | | months | |
| | [X] Increased | 2 | % in past | 3 | months | |
| | [ ] Remained Stable | | | | | |

Estimated percentages of owners vs. tenants in neighborhood: 90% owner occupant 10% tenant

| | | | | |
|---|---|---|---|---|
| There is a | [ ] Normal Supply | [ ] Over Supply | [X] Shortage of comparable listings in the neighborhood | |

| | |
|---|---|
| Approximate number of comparable units for sale in neighborhood | 0 |
| No. of competing listings in neighborhood that are REO or Corporate owned | 0 |
| No. of boarded or blocked-up homes | 0 |

## II. SUBJECT MARKETABILITY

| | |
|---|---|
| Neighborhood Boundaries defined | 10 mile radius |

| | | | | | |
|---|---|---|---|---|---|
| Range of sales in the neighborhood is | $ 1050000.00 | to $ 3750000.00 | | Total # of Properties | 18 |
| Range of listings in the neighborhood is | $ 1349000.00 | to $ 4.25 | | Total # of Properties | 14 |

| | |
|---|---|
| Subject is an | [ ] Over Improvement [ ] Under Improvement [X] Appropriate improvement for the neighborhood |

| | |
|---|---|
| Normal marketing time in the area is: | 35days |

| | |
|---|---|
| Are all types of financing available for the property? | [X] Yes [ ] No If no, explain |
| Has the property been on the market for the past 12 months? | [ ] Yes [X] No If yes, $ |
| Is the subject currently listed for sale: | [ ] Yes [X] No Current List price List Date |
| If listed, Provide the brokers Name | Firm Phone # |

Subjects total DOM for the past year 0 **Starting Listing Price** $ 0.00

First price reduction $ Second price reduction $ Third price reduction $

| | |
|---|---|
| To the best of your knowledge, why did it not sell? | N/A |

Subjects Last Sale Price:$1,275,000.00 Sale Date 7/14/2004

Additional Prior Sale Price within past 24 months: $Sale Date

| | |
|---|---|
| Unit type: | [X] Single Family [ ] Condo [ ] Townhouse [ ] Co-Op |
| | [ ] Modular [ ] Mobile Home [ ] Vacant Land [ ] Units # |

| | |
|---|---|
| If condo or other association exists Fee: | No |
| | $ [ ] Monthly [ ] Annually Current? [ ] Yes [ ] No Fee Delinquent $ |
| The fee includes: | [ ] Insurance [ ] Landscape [ ] Pool [ ] Tennis Other |

Association company: Contract name: Phone No:

Project Name: Total Number of units: Legal Action No



**III. COMPETITIVE CLOSED SALES**

| ITEM | SUBJECT | COMPARABLE NUMBER 1 | | COMPARABLE NUMBER 2 | | COMPARABLE NUMBER 3 | |
|---|---|---|---|---|---|---|---|
| Address | 250 Migues Mountain Lane Aptos, CA 95003 | 3375 ALLRED LN. SOQUEL, CA 95073 | | 40 VIA ARROYO WATSONVILLE, CA 95076 | | 344 LARKIN RIDGE APTOS, CA 95003 | |
| Proximity to Subject | | 5.34 REO/Corp ☐ | | 3.45 REO/Corp ☐ | | 1.39 REO/Corp ☐ | |
| Sale Price | $ | $ 1,895,000 | | $ 2,250,000 | | $ 2,625,000 | |
| Data and/or Verification Sources | Tax Records | MLS | | MLS | | MLS | |
| Price/Gross Living Area | | $485.28 | | $433.86 | | $537.14 | |
| List price at sale / # of price reductions | | $ 1,895,000 / 2 | | $ 2,250,000 / 0 | | $ 2,998,000 / 2 | |
| Sale type Reo / Short Sale / Foreclosure | | Traditional | | Traditional | | Traditional | |
| Sale Date/Days on Mkt | | 8/19/2022 | 50 | 3/6/2023 | 1 | 1/27/2023 | 172 |
| **VALUE ADJUSTMENTS** | **DESCRIPTION** | **DESCRIPTION** | **+(-) Adj** | **DESCRIPTION** | **+(-) Adj** | **DESCRIPTION** | **+(-) Adj** |
| Sales or Financing Concessions | | NONE | $ 0 | NONE | $ 0 | NONE | $ 0 |
| Location | Rural | Rural | $ 0 | Rural | $ 0 | Rural | $ 0 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | $ 0 | Fee Simple | $ 0 | Fee Simple | $ 0 |
| Lot Size (in Acres) | 1.48 | 2.59 | -$ 50,000 | 1 | $ 25,000 | 2.02 | -$ 25,000 |
| # of units | 1 | 1 | $ 0 | 1 | $ 0 | 1 | $ 0 |
| View | MOUNTAIN | MOUNTAIN | $ 0 | MOUNTAIN | $ 0 | MOUNTAIN | $ 0 |
| Appeal & Quality | Average | Average | $ 0 | Good | -$ 50,000 | Good | -$ 50,000 |
| Year Built | 1962 | 1997 | -$ 3,500 | 2006 | -$ 4,400 | 2000 | -$ 3,800 |
| Condition | Average | Average | $ 0 | Good | -$ 150,000 | Good | -$ 150,000 |
| Above Grade Room Count | Total 14 / Bdms 3 / Baths 3.5 | Total 12 / Bdms 3 / Baths 3.5 | $ 0 | Total 14 / Bdms 6 / Baths 5.5 | -$ 45,000 | Total 14 / Bdms 4 / Baths 5.5 | -$ 40,000 |
| Gross Living Area | 4500 Sq. Ft | 3905 Sq. Ft | $ 57,715 | 5186 Sq. Ft | -$ 66,542 | 4887 Sq. Ft | $ 37,539 |
| Basement & Finished Rooms Below Grade | NONE | NONE | $ 0 | NONE | $ 0 | NONE | $ 0 |
| Heating/Cooling | CENTRAL FORCED | CENTRAL FORCED | $ 0 | CENTRAL FORCED | $ 0 | CENTRAL FORCED | $ 0 |
| Garage/Carport | Attached - 4 | Attached - 2 | -$ 20,000 | Attached - 4 | $ 0 | Attached - 3 | $ 0 |
| Porches, Patio, Deck Fireplace(s), etc. Fence, Pool | PORCH,PATIO,FIREPLACE,FENCE,POOL | PORCH,PATIO,FIREPLACE,FENCE | $ 0 | PORCH,PATIO,FIREPLACE,FENCE | $ 0 | PORCH,PATIO,FIREPLACE,FENCE | $ 0 |
| Other / Functional Utility | AVERAGE | AVERAGE | $ 0 | GOOD | -$ 50,000 | SUPERIOR LOCATION | -$ 150,000 |
| NET Adj (total) | | + - | $34,215.00 | + - | $-290,942.00 | + - | $-381,261.00 |
| Adjusted Sales Price of Comparable | | | $1,929,215.00 | | $1,959,058.00 | | $2,243,739.00 |



## IV. CURRENT OCCUPANCY STATUS

| Occupancy Status: | ☐ | Unknown | ☒ | Occupied | | Vacant |
|---|---|---|---|---|---|---|
| Ownership Status: | ☒ | Main residence | ☐ | Rented | | |

## V. MARKETING OCCUPANCY STRATEGY

| Marketing Occupancy Strategy: | ☒ | Owner | ☐ | Vacant | ☐ | Tenant | ☐ | Other |
|---|---|---|---|---|---|---|---|---|
| Estimated Rent: $ 12500.00 per month | | | | | | | | |
| Recommended Marketing Strategy: | ☒ | As-Is | ☐ | Minimal Lender Required Repairs | ☐ | Repaired | | |
| Most Likely Buyer: | ☒ | Owner Occupant | ☐ | Investor | | | | |

## VI. REPAIRS

Itemize ALL repairs needed to bring property from the present "as is" condition to average marketable condition for the neighborhood. If EXTERIOR inspection is done, cost to cure estimates should only include exterior repairs. If INTERIOR inspection is done, both interior AND exterior estimates should be included. Check those repairs you recommend we perform for the most successful marketing of the property.

| | | | | |
|---|---|---|---|---|
| ☐ | None $ 0.00 | | ☐ | $ |
| ☐ | $ | | ☐ | $ |
| ☐ | $ | | ☐ | $ |
| ☐ | $ | | ☐ | $ |
| ☐ | $ | | ☐ | $ |

**GRAND TOTAL FOR ALL REPAIRS** $0.00

## VII. COMPETITIVE LISTINGS

| ITEM | SUBJECT | COMPARABLE NUMBER 1 | | COMPARABLE NUMBER 2 | | COMPARABLE NUMBER 3 | |
|---|---|---|---|---|---|---|---|
| Address | 250 Migues Mountain Lane Aptos, CA 95003 | 260 CAROL WAY APTOS, CA 95003 | | 130 PASEO BONITO LN. APTOS, CA 95003 | | 560 HIDDEN VALLEY RD. SOQUEL, CA 95073 | |
| Proximity to Subject | | 0.78 REO/Corp ☐ | | 3 REO/Corp ☐ | | 6.32 REO/Corp ☐ | |
| List Price | $ | $ 1,749,000 | | $ 2,160,000 | | $ 2,395,000 | |
| Price/Gross Living Area | | $467.02 | | $574.47 | | $582.30 | |
| Original list price / # of reductions | | $ 1,895,000 / 1 | | $ 2,160,000 / 0 | | $ 2,495,000 / 2 | |
| Data and/or Verification Sources | Appraisal | MLS | | MLS | | MLS | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) Adj | DESCRIPTION | +(-) Adj | DESCRIPTION | +(-) Adj |
| Sales or Financing Concessions | | NONE | $ 0 | NONE | $ 0 | NONE | $ 0 |
| Sale Date/Days on Mkt | | 32 | | 27 | | 182 | |
| Location | Rural | Rural | $ 0 | Rural | $ 0 | Rural | $ 0 |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | $ 0 | Fee Simple | $ 0 | Fee Simple | $ 0 |
| Lot Size (in Acres) | 1.48 | 2.402 | -$ 50,000 | 2.09 | -$ 25,000 | 1.4 | $ 0 |
| View | MOUNTAIN | MOUNTAIN | $ 0 | MOUNTAIN | $ 0 | MOUNTAIN | $ 0 |
| # of units | 1 | 1 | $ 0 | 1 | $ 0 | 1 | $ 0 |
| Appeal & Quality | Average | Average | $ 0 | Average | $ 0 | Good | -$ 50,000 |
| Year Built | 1962 | 1998 | -$ 3,600 | 1973 | -$ 1,100 | 1982 | -$ 2,000 |
| Condition | Average | Average | $ 0 | Good | -$ 150,000 | Good | -$ 150,000 |
| Above Grade Room Count | Total 14 / Bdms 3 / Baths 3.5 | Total 12 / Bdms 4 / Baths 3.5 | -$ 15,000 | Total 10 / Bdms 4 / Baths 3 | -$ 15,000 | Total 13 / Bdms 5 / Baths 4 | -$ 35,000 |
| Gross Living Area | 4,500 Sq. Ft | 3,745 Sq. Ft | $ 73,235 | 3,760 Sq. Ft | $ 71,780 | 4,113 Sq. Ft | $ 37,539 |
| Basement & Finished Rooms Below Grade | NONE | NONE | $ 0 | NONE | $ 0 | NONE | $ 0 |
| Heating/Cooling | CENTRAL FORCED | CENTRAL FORCED | $ 0 | CENTRAL FORCED | $ 0 | CENTRAL FORCED | $ 0 |
| Garage/Carport | Attached - 4 | Attached - 3 | $ 10,000 | Attached - 2 | $ 20,000 | Attached - 4 | $ 0 |
| Porches, Patio, Deck Fireplace(s), etc. Fence, Pool | PORCH,PATIO,FIREPLACE,FENCE, POOL | PORCH,PATIO,FIREPLACE,FENCE, POOL | $ 0 | PORCH,PATIO,FIREPLACE,FENCE, POOL | $ 0 | PORCH,PATIO,FIREPLACE,FENCE, POOL | $ 0 |
| Other / Functional Utility | AVERAGE | AVERAGE | $ 0 | HORSE PROPERTY | -$ 50,000 | AVERAGE | $ 0 |
| NET Adj (total) | | + ☐ - ☐ | $64,635.00 | + ☐ - ☐ | -$99,320.00 | + ☐ - ☐ | -$199,461.00 |
| Adjusted Sales Price of Comparable | | | $1,813,635.00 | | $2,060,680.00 | | $2,195,539.00 |

## VIII. MARKET VALUE

(The value must fall within the indicated value of the Competitive Closed Sales)

| | Market Value | Suggested List Price |
|---|---|---|
| AS IS 90 to 120 day value | $2,100,000.00 | $ 2,100,000.00 |
| REPAIRED 90 to 120 day value | $2,100,000.00 | $ 2,100,000.00 |
| 30-Day value | $1,900,000.00 | $ 1,900,000.00 |
| Land value | $ 750,000.00 | $ 750,000.00 |
| Last Sale of Subject, Price | $1,275,000.00 | Date 7/14/2004 |

Case: 23-50372    Doc# 21    Filed: 05/19/23    Entered: 05/19/23 16:17:43    Page 26 of 32


## IX. COMMENTS

(Include specific positives/negatives, special concerns, encroachments, easements, water rights, environmental concerns, flood zones, etc. Attach addendum if additional space is needed.)

SUBJECT IS A 3 BEDROOM 2.5 BATH HOME LOCATED IN AN ESTABLISHED NEIGHBORHOOD. HOME APPEARED TO BE IN OVERALL AVERAGE CONDITION WITH NO NOTABLE DAMAGES NOTICED AT TIME OF DRIVE BY. AREA IS WELL KEPT, QUIET AND WITH MINIMAL THROUGH TRAFFIC. IT IS WITHIN 3 MILES TO ALL AMENITIES, SCHOOLS, PARKS AND MAJOR ROADS FOR AN EASY COMMUTE. ALTHOUGH THERE ARE REO'S, SHORT SALES AND INVESTOR OWNED HOMES THE LOCAL MARKET IS NOT DRIVEN BY THEM, HOWEVER USING SUCH COMPS IS INEVITABLE AS INVENTORY IS LOW. THERE ARE NO KNOWN FUNCTIONAL OR ECONOMIC OBSOLESCENCE. DUE TO A MAJOR DECLINE IN INVENTORY I HAD TO EXPAND TO A 10 MILE RADIUS AND GO BACK 12 MONTHS ON THE SOLD COMPS TO FIND THE BEST AVAILABLE AND MAKE ADJUSTMENTS ACCORDINGLY.

## X. ADDENDUM

(Use this section to add additional comments, notes, and explanations.)

IF PRICED AS SUGGESTED THIS PROPERTY SHOULD HAVE NO PROBLEM WITH RESALE HOWEVER INTEREST RATES KEEP GOING UP AND BUYERS ARE STARTING TO HESITATE. THERE HAVE BEEN A NUMBER OF PRICE REDUCTIONS IN THIS PRICE RANGE AND TRANSACTIONS FALLING THROUGH. PRICING AT QUICK SALE SUGGESTED PRICE IS WHAT I WOULD RECOMMEND DUE TO THIS.



## Quality Assurance

Comp Sales

Please provide an explanation as to why one or more of the comps used are in a different city than the subject property.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps used are in a different zip than the subject property.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps used are more than 1 mile in proximity from the subject property.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps used has a lot size that is 30% less/more than the subject property.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps does not meet the following Age criteria: If subject property age is 15 (years) or less, the Age value entered for any comp must be within 5 years of the subject property's age. If the subject property age is greater than 15 (years), the Age value entered for any comp must be within 30% older or newer than the subject property's age. Additionally, at least 2 of the sales comps and 2 of the listing comps must be within 10 years of the subject property's age.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why at least one of the sales comps are beyond the range of the listings in the immediate area.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Comp Listings

Please provide an explanation as to why one or more of the comps used are in a different city than the subject property.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps used are in a different zip than the subject property.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps used are more than 1 mile in proximity from the subject property.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps used has a lot size that is 30% less/more than the subject property
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why one or more of the comps does not meet the following Age criteria: If subject property age is 15 (years) or less, the Age value entered for any comp must be within 5 years of the subject property's age. If the subject property age is greater than 15 (years), the Age value entered for any comp must be within 30% older or newer than the subject property's age. Additionally, at least 2 of the sales comps and 2 of the listing comps must be within 10 years of the subject property's age.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Please provide an explanation as to why at least one of the List comps are beyond the housing supply range.
THE BEST AVAILABLE COMPS WERE USED AND ADJUSTMENTS WERE MADE ACCORDINLGY. WE HAD TO BACK 12 MONTHS ON THE SOLD COMPS AND EXPAND TO A 10 MILE RADIUS TO FIND COMPS DUE TO LOCATION AND SIZE.

Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. The above information was obtained from sources deemed to be reliable, but is not guaranteed, and is submitted subject to error and omission. USRES and Agents make no warranties, either expressed or implied, as to the completeness and/or accuracy of any information contained herein. This is a Broker Pricing Opinion only.

(Signature Date)



Subject Property Address:
250 Migues Mountain Lane, Aptos, CA 95003
Loan No: 250migues    Order ID: 236337
Owner:

Exterior Subject Photo (Frontal) 250 Migues Mountain Lane, Aptos, CA 95003



Close-Up of Address Photo





Street Scene Photo





Subject Property Address:
250 Migues Mountain Lane, Aptos, CA 95003
Loan No: 250migues      Order ID: 236337
Owner:

Comparable Photos (Listing 1)

Comparable Photos (Listing 2)



Comparable Photos (Listing 3)

Comparable Photos (Sales 1)





Comparable Photos (Sales 2)

Comparable Photos (Sales 3)







Subject Property Address:
250 Migues Mountain Lane, Aptos, CA 95003
Loan No: 250migues    Order ID: 236337
Owner:

Additional BPO Pic
Street Verification





Subject Property Address:
250 Migues Mountain Lane, Aptos, CA 95003
Loan No: 250migues     Order ID: 236337
Owner:



S = Subject 250 Migues Mountain Lane, Aptos, CA 95003

1 = Sales Comp $ 1,895,000 3375 ALLRED LN.

2 = Sales Comp $ 2,250,000 40 VIA ARROYO

3 = Sales Comp $ 2,625,000 344 LARKIN RIDGE

1 = Listing Comp $ 1,749,000 260 CAROL WAY

2 = Listing Comp $ 2,160,000 130 PASEO BONITO LN.

3 = Listing Comp $ 2,395,000 560 HIDDEN VALLEY RD.