1  Mark S. Bostick (Bar No. 111241)
   Lisa Lenherr (Bar No. 258091)
2  **FENNEMORE WENDEL**
   1111 Broadway, 24th Floor
3  Oakland, California 94607-4036
   Telephone: (510) 834-6600
4  Fax: (510) 834-1928
   Email: mbostick@fennemorelaw.com
5  Email: llenherr@fennemorelaw.com

6  Attorneys for Margot Schwartz, Noah Schwartz,
   and Schwartz Foundation, Creditors
7

8

9                    UNITED STATES BANKRUPTCY COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                          SAN JOSE DIVISION

12

13  In re                                Case No. 23-50372-HLB

14  DONALD CHARLES SCHWARTZ,             Chapter 13

15          Debtor.                      **OBJECTIONS TO CHAPTER 13 PLAN**

16

17          Noah Schwartz, Margot Duffy Schwartz, and Schwartz Foundation (collectively

18  "**Creditors**"), creditors herein, hereby objects to confirmation of the Chapter 13 Plan filed by

19  Donald Schwartz, debtor herein ("**Debtor**"), filed on May 4, 2023 (Docket No. 14) (the "**Plan**"),

20  as follows:

21          1.      Creditors are the plaintiffs and Debtor is a defendant in that certain litigation

22  *Schwartz Foundation et al v. Donald C. Schwartz et al.*, pending in the Superior Court of the State

23  of California, in County of Santa Cruz, as Case No. 21-CV00416 ("**Litigation**"). In the Litigation,

24  Creditors seek declaratory relief, injunctive relief, and costs of suit. A copy of the Litigation's first

25  amended complaint is attached hereto as **Exhibit A**.

26          2.      Margot Schwartz is separately listed as a creditor in the amount of $0.00 in the

27  Schedules. (Docket No. 13, p. 16, filed May 4, 2023.) In the Litigation, a sanctions order was

28  entered in favor of Creditors against Debtor for the sum of $4700 under an order dated January 10,

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 1 of 78

2022. None of those sanctions have been paid. Various other sanctions motions by Creditors are pending against Debtor in the Litigation in the total sum of $9,605.00.

3. The Schedules and Statement of Financial Affairs fails to reflect the Litigation.

4. Creditors' preliminary review of the Plan, the Schedules, and the Statement of Financial Affairs, lead them to believe that the Plan is deficient, *inter alia*, as follows:

a. the Debtor will be unable to make the payments contemplated by the Plan (11 U.S.C. § 1325(a)(6)); indeed, Schedule J shows a $457.58 net monthly income (Docket No. 13, p. 25, filed May 4, 2023), but the Plan appears to propose monthly payments in the amount of $2,5000.00 (for 6 months) and $5,500 (for 54 months) (Docket No. 14, p. 1, filed May 4, 2023);

b. the Schedules fail to value that certain real property identified as 250 Migues Mountain Lane ("**Property**"), and yet the Plan proposes to retain the Property, strip the second lien, and to pay 0% to unsecured creditors. (Docket No. 14, filed May 4, 2023.) Without additional information on the Property, all creditors lack sufficient information to evaluate whether the Plan provides for distribution to unsecured claimants in an amount less than the amount creditors would receive if the Debtor were liquidated under chapter 7 (11 U.S.C. § 1325(a)(4)). Debtor should be required to amend his Schedules and/or provide reliable information on the value of the Property prior to confirmation.

6. Nothing herein shall be construed to limit or waive Creditors' right to further object to this Plan or any subsequent version or amendment on any ground whatsoever.

7. Pursuant to Local Bankruptcy Rule ("BLR") 3015-1(b)(3), this objection shall be considered an objection to all subsequent versions and amendments until withdrawn.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

8.     Creditors request that they receive 21 days' notice as an "adversely affected creditor[]" of any amended plan and of the date and time of the hearing on confirmation of any amended plan pursuant to BLR 3015-1(b)(2).

DATED:  May 22, 2023

FENNEMORE WENDEL

By:  <u>*/s/ Mark S. Bostick*</u>
Mark S. Bostick
Lisa Lenherr
Attorneys for Creditors Margot Schwartz, Noah Schwartz, and Schwartz Foundation

# CERTIFICATE OF SERVICE

I, Jeanne Rose, declare:

I am a citizen of the United States and am employed in Alameda County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1111 Broadway, 24th Floor, Oakland, California 94607-4036.

On the date set forth below, I served a copy of the following document(s):

## OBJECTIONS TO CHAPTER 13 PLAN

[X]  by ECF. Pursuant to controlling General Orders, the foregoing document will be served by the court via notice of electric filing. On the date set forth below, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive notice of electronic filing transmission at the email addresses stated below:

Devin Derham-Burk
ctdocs@ch13sj.com

Aaron Lipton on behalf of Debtor Donald Charles Schwartz
aaron@lipton-legal.com, aaron@ecf.courtdrive.com

Office of the U.S. Trustee / SJ
USTPRegion17.SJ.ECF@usdoj.gov

Renee M. Parker on behalf of Creditor Real Time Resolutions, Inc.
renee.parker@mtglawfirm.com

[  ]  (by mail) by placing a true and correct copy thereof enclosed in a sealed envelope with first-class postage prepaid in a designated area for outgoing mail, addressed as set forth below. At Fennemore Wendel, mail placed in that designated area is given the correct amount of postage and is deposited that same day, in the ordinary course of business, in a United States mailbox in the City of Oakland, California to the following recipients:

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on May 22, 2023, at Oakland, California.

_____
/s/ Jeanne Rose
JEANNE ROSE

# EXHIBIT A

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 5 of 78

1  David A. Stein, SBN# 102556
   dstein@donahue.com
2  Jessica M. Takano, SBN# 184079
   jtakano@donahue.com
3  Kristoffer S. Jacob, SBN# 320286
   kjacob@donahue.com
4  DONAHUE FITZGERALD LLP
   Attorneys at Law
5  1999 Harrison Street, 26th Floor
   Oakland, California 94612-3520
6  Telephone:    (510) 451-3300
   Facsimile:    (510) 451-1527
7
   Attorneys for Plaintiffs
8  SCHWARTZ FOUNDATION, MARGOT
   SCHWARTZ, and NOAH SCHWARTZ
9

ELECTRONICALLY FILED
Superior Court of California
County of Santa Cruz
6/14/2021 2:55 PM
Alex Calvo, Clerk
By: Dajah de los Santos, Deputy

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 IN AND FOR THE COUNTY OF SANTA CRUZ

12

13  Schwartz Foundation, a California         Case No.  21CV00416
    corporation; Margot Schwartz, an
14  individual; and Noah Schwartz, an         **FIRST AMENDED COMPLAINT FOR
    individual,                               RELIEF UNDER CORPORATIONS CODE
15                                            SECTION 5617, INCLUDING
                    Plaintiffs               DECLARATORY AND INJUNCTIVE
16                                            RELIEF**

17         v.

18  Donald C. Schwartz, an individual;
    Paul D. Schwartz, an individual;
19  Charles P. Schwartz, III, an individual;
    David Richard Schwartz, an individual;
    Stevon S. Schwartz, an individual;
20  and DOES 1-50, inclusive,

21                  Defendants.

22

23         Come now Plaintiffs SCHWARTZ FOUNDATION, MARGOT SCHWARTZ, and

24  NOAH SCHWARTZ (collectively, "Plaintiffs") and allege against Defendants DONALD C.

25  SCHWARTZ, PAUL D. SCHWARTZ, CHARLES P. SCHWARTZ, III, DAVID RICHARD

26  SCHWARTZ, STEVON S. SCHWARTZ, MICHAEL LEANOR OSTERBERG, and DOES 2-

27  50, inclusive (collectively, "Defendants"), as follows:

28  ///

FIRST AMENDED COMPLAINT FOR RELIEF UNDER CORP. CODE § 5617

**PARTIES**

1.     Plaintiff SCHWARTZ FOUNDATION (the "Foundation") is a California corporation, duly organized and existing under the laws of the State of California.

2.     Plaintiff MARGOT SCHWARTZ ("Margot") is an individual currently residing in the State of Wisconsin, and with a residence in the State of California.

3.     Plaintiff NOAH SCHWARTZ ("Noah") is an individual residing in the State of California.

4.     Plaintiffs are informed and believe, and based thereon allege, that Defendant DONALD C. SCHWARTZ ("Donald") is an individual residing in the State of California, in Santa Cruz County.

5.     Plaintiffs are informed and believe, and based thereon allege, that Defendant PAUL D. SCHWARTZ ("Paul") is an individual residing in the State of California, in Alameda County.

6.     Plaintiffs are informed and believe, and based thereon allege, that Defendant CHARLES P. SCHWARTZ, III ("Charles") is an individual residing in the State of California, in Santa Cruz County.

7.     Plaintiffs are informed and believe, and based thereon allege, that Defendant DAVID RICHARD SCHWARTZ ("David") is an individual residing in the State of California, in Contra Costa County.

8.     Plaintiffs are informed and believe, and based thereon allege, that Defendant STEVON S. SCHWARTZ ("Stevon") is an individual residing in the State of California, in Alameda County.

9.     Plaintiffs are informed and believe, and based thereon allege, that Defendant MICHAEL LEANOR OSTERBERG ("Osterberg") is an individual residing in the State of California, in Alameda County. Osterberg was originally named in this action in place of Doe 1, and was erroneously named as "Michael Lenor Osterberg."

10.     Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 2-50, inclusive, and therefore sue these Defendants by such fictitious names.  Plaintiffs

-1-

will amend this Complaint to allege their true names and capacities when ascertained.

## GENERAL ALLEGATIONS

### History and Activities of the Foundation

11.     The Foundation was formed in 1979 by Robert A. D. Schwartz ("Robert), who had a particular interest in education and improving academic outcomes. In the late 1970s, the Foundation initiated a peer tutoring program in the Oakland Unified School District and continued to support this program for twelve years. The program eventually served more than 30 schools and regularly brought together educators, civic leaders, and parents for learning conferences.

12.     Based on the early success of this peer tutoring program, Robert, his wife Debbra Schwartz ("Debbra"), and their daughter Margot became interested in having the Foundation establish a permanent resource for those interested in using peer tutoring as an instructional strategy. They commissioned a research report from the Urban Strategies Council (the "Council") in 2012 and participated in numerous discussions with representatives of the Council and other stakeholders regarding the planning and implementation of this significant project. Once the Council produced a report demonstrating the effectiveness of peer tutoring in schools across the United States, Robert, Debbra, and Margot decided to devote a substantial amount of their time and Foundation resources to the development of an online Peer Tutoring Resource Center. In 2013, they launched https://www.peertutoringresource.org/ptrl/ – the Peer Tutoring Resource Center website – which includes a research library, database of classroom and program materials, and a forum for practitioners to share challenges and successes.

13.     In addition to its focus on peer tutoring and education, the Foundation's charitable work during the time Margot has been a director and officer (since 2009) has included supporting a music program for the elderly in nursing homes and other residential facilities, which includes performances by a jazz band called The Therapists. This program has been ongoing since 2015. Both Robert and one of his sons, Robert D. D. Schwartz ("Rob"), played in the band, which also produced two studio albums paid for by the Foundation.

///

**Foundation Governance**

14. The Foundation was incorporated on November 14, 1979. The following individuals were listed as the Foundation's initial directors: (1) Robert; (2) Donald; and (3) Thom R. Picarello. On November 4, 1983, Mr. Picarello resigned as a director, and Osterberg was added as a director.

15. Plaintiffs are informed and believe, and based thereon allege, that in the 1980s or 1990s, Donald and his three brothers (all children of Robert's first marriage) sued Robert for reasons unrelated to the Foundation, resulting in a lengthy and acrimonious dispute. Whether it was because of this lawsuit or for other reasons, Donald ceased having any involvement with the Foundation. In fact, there is no record of Donald acting or being identified as a director or officer of the Foundation after 1984. Nor is there any record of Osterberg acting or being identified as a director or officer of the Foundation after 1984. Instead, Robert and Debbra ran the Foundation together and were identified on its legal and tax filings as the Foundation's only directors and officers. (The sole exception to this was when one of Robert's sons, Robert D. D. Schwartz ("Rob") was listed as an officer on one Statement of Information in the 2007-2008 time period.)

16. More recently, between 2009 and 2017, Margot assisted Robert and Debbra in running the Foundation. They were all directors and officers of the Foundation and were listed as such in the Foundation's tax filings and its filings with the California Secretary of State and Attorney General (Registry of Charitable Trusts). No one else was listed as a director or officer on any of these filings. There was also no indication that Donald and/or Osterberg remained involved with the Foundation.

17. In February 2017, Robert passed away. Debbra and Margot then continued to manage the Foundation together.

18. Corporate counsel for the Foundation worked with Debbra and Margot on Foundation matters. Among other things, the Foundation did not have minutes or other formal corporate records documenting its operations and corporate governance over the course of many years. In order to clarify the situation, counsel searched their firm's records and reviewed a number of publicly available filings for the Foundation to determine the identities of the directors

-3-

and officers of the Foundation over the decades of its existence. They found no records indicating that Donald and/or Osterberg had continued to be a director or officer of the Foundation after 1983.

19.     On July 31, 2020, Debbra unexpectedly passed away. As the sole remaining officer or director of the Foundation, Margot called a special meeting on August 3, 2020. At this meeting, Margot elected her brother, Noah Alexander Schwartz ("Noah"), to the Board of Directors. Since that time, Margot and Noah have been handling the affairs of the Foundation as its only two officers and directors. Attached hereto as **Exhibit A** is a true and correct copy of the minutes for the August 3, 2020 special meeting.

20.     Based on the information gleaned from their own files and the Foundation's publicly available filings, corporate counsel for the Foundation prepared a Unanimous Written Consent ("UWC") for execution by the Foundation's Board, for the purpose of ratifying, confirming, and approving the actions of the corporation and its officers since 1983. The UWC confirmed past actions of the Foundation, including, but not limited to: (1) authorizing the removal and/or resignation of Donald as director, Vice President, and Secretary of the corporation, effective December 31, 1990; and (2) authorizing the removal and/or resignation of Osterberg as director and Treasurer of the corporation, effective December 31, 1990. The UWC also recognized Margot and Noah as directors and officers of the Foundation since 2009 and 2020, respectively. On August 27, 2020, the Board of Directors of the Foundation executed the UWC. Attached hereto as **Exhibit B** is a true and correct copy of the UWC approved by the Board.

21.     Also on August 27, 2020, the Board approved a set of Amended and Restated Bylaws that corporate counsel had prepared for the Foundation, to conform to current law and best practices. These amended bylaws name Margot and Noah as Designators with the authority to appoint, remove and replace directors, and provide that each Designator shall serve for life or until the Designator resigns or becomes incapacitated. Attached hereto as **Exhibit C** is a true and correct copy of the Amended and Restated Bylaws approved by the Board.

22.     The Foundation filed an updated Statement of Information with the California

-4-

Secretary of State on September 11, 2020. This filing listed Margot as the Chief Executive Officer and Noah as the Secretary and Chief Financial Officer, and it identified the Foundation's corporate counsel Erik Dryburgh as its Agent for Service of Process. Attached hereto as **Exhibit D** is a true and correct copy of this Statement of Information.

**Donald's Efforts to Deprive the Foundation of Assets**

23.     Donald is one of Robert's children from his first marriage and is a half-brother to Margot and Noah. Although Foundation records reflect that Donald was one of the original directors in 1979, he demonstrated no interest in the Foundation's charitable work or its mission during the entire time period of Margot's involvement with the Foundation, from at least 2009 to the present.

24.     Recently, Donald launched a campaign to try to take control of the Foundation (or at least its assets), because the Foundation stands to receive substantial property as a result of the death of Robert in February 2017 and Debbra in July 2020. Robert's estate plan provided for two large apartment buildings in San Leandro (the "Buildings"), which produce substantial rental income, to be held in trust to benefit Debbra during her lifetime. Upon Debbra's passing, the trust provides for the Buildings to be transferred to the Foundation to support its ongoing charitable work.

25.     After Robert's passing, Donald received a substantial cash gift per the terms of Robert's will, and the probate of Robert's will closed in January 2020. There was no formal objection from Donald or anyone else, although Donald clearly was not satisfied with his inheritance, either at the time of the probate of Robert's estate or thereafter. Donald presumably did not make any formal objection because the will contained a no-contest clause, and any objection would have carried with it the risk of losing his inheritance. However, by his actions described herein, Donald is actively attempting to violate Robert's estate plan and avoid Robert's testamentary intent, which was to provide assets to the Foundation to fund its ongoing operations and charitable mission.

26.     After Debbra's passing on July 31, 2020, Donald aggressively tried to enlist the support and consent of his six siblings and half-siblings (Robert's children from his three

FIRST AMENDED COMPLAINT FOR RELIEF UNDER CORP. CODE § 5617

marriages) to prevent the Buildings from passing to the Foundation as Robert had intended.

27.     Donald began using veiled and overt threats, as well as outright lies, to try to bully Margot and Noah into going along with his plan to take the Foundation's rightful assets. Donald's campaign to rob the Foundation of its intended assets included the following:

a.  On August 2, 2020 Donald called Margot and Noah, ostensibly to offer condolences on the passing of their mother on July 31. He expressed a desire to have a family meeting with all of their siblings.  During this conversation, Donald stated that Margot and Noah had a choice to make between "working together" or "blowing up the family."  Donald implied that he and his other brothers (Margot and Noah's half-brothers) had some kind of plan they hoped everyone would participate in, and that if Margot and Noah did not do what the sibling group wanted, they would be choosing to destroy the family.  Donald even used the word "victim" at one point, describing what might happen to Margot and Noah if they chose unwisely.  Margot perceived this at the time as a threat, but she agreed (in the interest of giving Donald the benefit of the doubt) to find a time to get together and told him she would be in touch about that when she and Noah were ready.

b.  On the evening of August 4, 2020, Margot received a text message from Donald asking to "talk briefly in the morning." She responded the next day letting him know that she would be traveling and therefore would not be available to talk and that she would let him know when she was back in town. To this, he responded, "Very important we talk - briefly." Margot did not respond as she did not have the emotional bandwidth for a conversation with him at that moment.  A true and correct copy of this text message chain is attached hereto as part of **Exhibit E**.

c.  On August 12, 2020, Donald sent Margot a text message saying, "Not contacting me is a bad decision."  She perceived this to be a threat but chose to respond the next day in a cordial manner, as she had been told that Donald had a past history of violence and alcoholism and did not wish to provoke him. A true and correct copy of this text message is attached hereto as part of **Exhibit E**.

d.  On August 15, 2020, Margot and Noah sent an email to all of the Schwartz half-brothers to set up a Zoom meeting for August 24. On August 22, Donald requested that a Trust attorney be added to the meeting. Margot responded, "who is this attorney planning to represent?" This elicited a lengthy response from Donald in which he explained in great detail an elaborate scheme to attempt to break the Will and Trust of Robert in order to divert funds away from the Foundation and into the hands of Donald and his siblings. His aim was to convince Margot and Noah to go along with this plan because "if we all agree, then we can get control of the Trust ourselves and directly benefit therefrom." Margot and Noah responded that they had no interest in participating in such a plan. Attached hereto as **Exhibit F** is a true and correct copy of this email chain, including Donald's August 22, 2020 email detailing his plan to deprive the Foundation of its intended assets.

e.  In response to this refusal to go along with his plan, Donald sent Margot an email on August 23, 2020 stating, "I gave you an opportunity to do the right thing. You are choosing otherwise... Once again, we can choose to work together or against each other. The choice is yours." Margot perceived this to be a threat. Attached to this email was an Affadavit (sic), the author of whose name was redacted by Donald. It alleged, among other things, that Debbra and a close family friend, attorney David Kelvin, had "worked together to falsify a Trust document whereby Debbra Wood Schwartz would be the sole beneficiary of a Trust and thereby

-6-

knocking-out (sic) Donald Charles Schwartz as a beneficiary of his father's estate plan — and thereby destroying the original Trust instrument." Despite the redaction, the name on the "Affadavit" was readable and was Derek Sean Wheat, a man who Plaintiffs are informed and believe has at least one felony conviction and who is a very close friend of Donald. Margot asked David Kelvin about these claims, and he of course denied the allegations. (Mr. Kelvin has since passed away.) Attached hereto as **Exhibit G** is a true and correct copy of Donald's August 23, 2020 email to Margot with its attachment.

f.  On October 22, 2020, Donald sent Margot an email asking, "Do you have an attorney on the Schwartz Foundation? If not, I will address some concerns specific to the Foundation to you." Margot did not respond to this email, as Donald had been told many times by that point not to contact her. Attached hereto as **Exhibit H** is a true and correct copy of Donald's October 22, 2020 email.

## Donald's Efforts to Gain Control of the Foundation

28.  After Donald failed to convince all of his siblings to try to steal the Buildings from the Foundation, he apparently decided to instead try to take control of the Foundation itself (and presumably, its current and future assets). As Plaintiffs learned only after the fact, Donald filed a lawsuit seeking declaratory relief on January 7, 2021, entitled *In re Schwartz Foundation*, Santa Cruz County Superior Court Case No. 21CV00032. He then filed an ex parte application in that action on January 8, 2021 – without giving notice to the Foundation, Margot, or Noah – seeking to establish himself, one of his brothers, and his son as the Board of Directors of the Foundation. Since no one had notice or an opportunity to oppose the request, on January 12, 2021, the Court entered an order granting the requested relief (the "Order").[1]

29.  After fraudulently obtaining entry of the Order, Donald proceeded to convene meetings of the supposed Board of Directors appointed by the Order. He also electronically filed his own Statement of Information on January 27, 2021, followed by another version on January 31, 2021, in a transparent effort to manufacture an "official" paper trail for the Foundation with his name on it.

30.  Plaintiffs learned of Donald's legal machinations after Margot received a call on February 10, 2021 from Tim Sanchez ("Tim") at Morgan Stanley, who is part of the investment

---

[1] The Order was later set aside by the Court, as having been obtained through extrinsic fraud, in an order entered on March 24, 2021 in Case No. 21CV00032.

Case: 23-50372    Doc# 22    Filed: 09/22/23    Entered: 09/22/23 08:38:41    Page 13 of 78

team for the Foundation. Since Debbra's death in 2020, Margot and Noah have been working directly with Tim and his team concerning the investment of the Foundation's assets. Tim told Margot that he had received some documents from Donald, and that Donald was claiming to be the chairman of the Board of the Foundation.

31.    Margot called the Foundation's bookkeeper, Max Meregillano ("Max"), to ask if he knew how Donald had learned about the Foundation's account at Morgan Stanley. Max acknowledged that Donald had called and emailed him, claiming to be in charge of the Foundation, and Max had provided Donald with a voided check and the Morgan Stanley information.

32.    Margot also called one of her other half-brothers, Rob, to ask if he had heard anything about Donald claiming to be the chairman of the Board of the Foundation. Rob had been blind copied on Donald's February 10, 2021 email to Max, and he forwarded it to Margot.

33.    In his February 10, 2021 email, Donald provided Max with the fraudulent Order and other documents he had manufactured to support his claim that he is in control of the Foundation. After making various self-serving misstatements, Donald closed his email by stating, "**Please let me immediately know of any and all banking information for the Schwartz Foundation. I need the name of the Bank, the Branch (if possible), the account numbers and any contact information that you may have. I would like to see the most recent bank balances on the accounts**." Attached hereto as **Exhibit I** is a true a correct copy of Donald's February 10, 2021 email to Max, without the referenced attachments.

34.    On February 11, 2021, Tim sent Margot the email that Morgan Stanley had received from Donald the previous day, in which Donald asked that Morgan Stanley contact him "to discuss establishing new account privileges." Donald's email also stated, "Please be advised that Margot Schwartz and Noah Schwartz corporate officerships (if any they had) with the Schwartz Foundation have been terminated." Attached hereto as **Exhibit J** is a true and correct copy of Donald's February 10, 2021 email, as forwarded to Margot by Tim Sanchez at Morgan Stanley.

35.    On February 16, 2021, Margot received an email from Max with a copy of a

-8-

"cease and desist" letter dated February 10, 2021 that he had received from Mark Steven Corrinet, Donald's co-counsel at that time in Case No. 21CV00032. The letter stated, in part, that "the Board of Directors of the Schwartz Foundation has terminated any and all officer positions purportedly held by Margot Schwartz and Noah Schwartz. . . . You are hereby instructed to cease and desist from engaging [sic] any further corporate activities with Margot Schwartz and Noah Schwartz other than to receive the books and records that they return to you." Attached hereto as **Exhibit K** is a true a correct copy of Max's February 16, 2021 email to Margot and the attached February 10, 2021 cease and desist letter.

36.     Since Margot and Noah have been entirely responsible for all corporate activities, including hiring, supervising, and paying employees and independent contractors of the Foundation, Max was concerned by the cease and desist letter's purported directive to stop engaging in corporate activities with Margot and Noah.  Specifically, Max asked Margot, "Do I stop paying Temitayo [the Foundation's employee] for her services and inform her to stop working?" (See Exhibit K.)

37.     In addition to the confusion caused by his supposed "cease and desist" directives, Donald's conduct has caused serious, immediate harm to the Foundation and its day-to-day operations. As a result of the supposed "dispute" that Donald manufactured regarding the identities of the authorized representatives of the Foundation, Morgan Stanley initially placed the Foundation's account on restricted status, which prevented the Foundation from making payroll distributions.[2] Until this dispute is resolved and the identities of the directors of the Foundation are determined by this Court, Plaintiffs are informed and believe that Donald and the other Defendants will continue to take the position that Margot and Noah are not directors and do not have the authority to act on behalf of the Foundation, and that instead, Donald and other allied individuals are the directors.

///

---

[2] This specific issue was resolved once the Court issued its March 24, 2021 order setting aside Donald's Order as having been obtained by extrinsic fraud.

## FIRST CAUSE OF ACTION

### Claim for Relief Under Corporations Code Section 5617

### (Against All Defendants)

38. Plaintiffs hereby incorporate by reference each and every allegation contained in paragraphs 1 through 37, inclusive, of this Complaint as though fully set forth herein.

39. California Corporations Code Section 5617 provides as follows:

> (a) Upon the filing of an action therefor by any director or member, or by any person who had the right to vote in the election at issue, the superior court of the proper county shall determine the validity of any election or appointment of any director of any corporation.

> (b) Any person bringing an action under this section shall give notice of the action to the Attorney General, who may intervene.

> (c) Upon the filing of the complaint, and before any further proceedings are had, the court shall enter an order fixing a date for the hearing, which shall be within five days unless for good cause shown a later date is fixed, and requiring notice of the date for the hearing and a copy of the complaint to be served upon the corporation and upon the person whose purported election or appointment is questioned and upon any person (other than the plaintiff) whom the plaintiff alleges to have been elected or appointed, in the manner in which a summons is required to be served, or, if the court so directs, by registered mail; and the court may make such further requirements as to notice as appear to be proper under the circumstances.

> (d) The court, consistent with the provisions of this part and in conformity with the articles and bylaws to the extent feasible, may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, may determine the validity of the issuance of memberships and the right of persons to vote and may direct such other relief as may be just and proper.

40. An actual and justiciable controversy now exists between and among Plaintiffs and Defendants regarding the identities of the Directors of the Schwartz Foundation. Plaintiffs contend that Margot and Noah are the only Directors of the Foundation, for the reasons set forth fully above. Plaintiffs are informed and believe, and based thereon allege, that Defendants contend that: (1) Donald, Stevon, and Charles were properly named as the directors of the Foundation in the Order entered by this Court on January 12, 2021 in Case No. 21CV00032 (which was subsequently set aside on March 24, 2021); and/or (2) Donald and Osterberg have

-10-

1    remained directors of the Foundation at all times since 1983.

2        41.    Plaintiffs seek a determination under Corporations Code Section 5617 that Margot

3    and Noah are the only two persons entitled to the office of director of the Foundation. Plaintiffs

4    further seek "such other relief as may be just and proper," including, but not limited to, the

5    following:

6            a.   A declaration that any and all actions taken by Defendants in or after January
                  2021, as purported individual directors, or collectively as the purported Board of
7                 Directors of the Foundation, are void ab initio.

8            b.   A declaration that any purported Board of Directors meetings held in or after
                  January 2021 by Defendants, or any of them, are a nullity, and that any actions,
9                 votes, or decisions at such meetings are void ab initio.

10           c.   A declaration that any purported election or appointment of directors or officers of
                  the Foundation in or after January 2021 by Defendants, or any of them – including,
11                but not limited to, the election or appointment of all Defendants named in this
                  action – is void ab initio.
12
             d.   A declaration that any legal, tax, or other official filing made in or after January
13                2021 on behalf of the Foundation by Defendants, or any of them, or anyone else
                  acting in concert with any of them or at their direction, is void ab initio. This shall
14                include, but not be limited to, the filing of the January 27, 2021 and January 31,
                  2021 Statements of Information by Donald.
15
             e.   A permanent injunction precluding any of the Defendants herein from purporting
16                to be or act as a director or officer of the Foundation, unless they are expressly
                  permitted to do so by the legitimate directors declared by this Court.
17

18       42.    Plaintiffs are the parties aggrieved by the fraudulent and wrongful Court Order

19   appointing Donald, Stevon, and Charles as the Board of Directors of the Foundation, which was

20   entered without notice to Plaintiffs or any opportunity for them to be heard. Plaintiffs are further

21   aggrieved by Defendants' wrongful conduct in continuing to claim that Margot and Noah are not

22   directors of the Foundation, and that instead, Donald and other allied individuals are the directors.

23   Plaintiff therefore requests that this Court immediately set a hearing pursuant to Corporations

24   Code Section 5617 to determine the identities of the directors of the Schwartz Foundation, and to

25   determine the propriety of the additional relief requested by Plaintiffs as set forth above.

26       WHEREFORE, Plaintiffs pray for relief as set forth below.

27   ///

28   ///

**<u>PRAYER FOR RELIEF</u>**

Now, therefore, Plaintiffs prays for relief as follows:

1. For a judicial declaration under Corporations Code Section 5617 that there are only two Directors of the Foundation – Margot Schwartz and Noah Schwartz.

2. For a declaration that any and all actions taken by Defendants in or after January 2021, as purported individual directors, or collectively as the purported Board of Directors of the Foundation, are void ab initio.

3. For a declaration that any purported Board of Directors meetings held in or after January 2021 by Defendants, or any of them, are a nullity, and that any actions, votes, or decisions at such meetings are void ab initio.

4. For a declaration that any purported election or appointment of directors or officers of the Foundation in or after January 2021 by Defendants, or any of them – including, but not limited to, the election or appointment of all Defendants named herein – is void ab initio.

5. For a declaration that any legal, tax, or other official filing made in or after January 2021 on behalf of the Foundation by Defendants, or any of them, or anyone else acting in concert with any of them or at their direction, is void ab initio. This shall include, but not be limited to, the filing of the January 27, 2021 and January 31, 2021 Statements of Information by Donald.

6. For a permanent injunction precluding any of the Defendants herein from purporting to be or act as a director or officer of the Foundation, unless they are expressly permitted to do so by the legitimate directors declared by this Court.

7. For the costs of suit herein incurred, including attorneys' fees to the extent permitted by law; and

8. For such other and further relief as this Court may deem proper.

Dated: _June 4_, 2021          DONAHUE FITZGERALD LLP

By: _____
Jessica M. Takano
Attorneys for Plaintiffs
SCHWARTZ FOUNDATION, MARGOT
SCHWARTZ, and NOAH SCHWARTZ

-12-

# EXHIBIT A

August 3, 2020.

Special meeting of RAD Schwartz Foundation for the purposes of electing new board officers.

In attendance: Margot Schwartz, secretary.

Meeting is called to order 5:40 pm, 2822 Hillegass Ave Berkeley CA 94705.

Margot Schwartz elects Noah Alexander Schwartz as a Board Director, in the position of Treasurer.

Meeting adjourned 5:45 pm.

# EXHIBIT B

---------- Forwarded message ---------
From: **noah schwartz** <schwoah@gmail.com>
Date: Thu, Aug 27, 2020 at 7:46 PM
Subject: Re: UWC Schwartz Foundation
To: Margot Schwartz <margotduffyschwartz@gmail.com>


Approved.

On Thu, Aug 27, 2020 at 5:30 PM Margot Schwartz <margotduffyschwartz@gmail.com>
wrote:
> For your approval—

| |
|---|
| ☐   UWC of Directors in Lieu of Meeting… |

# UNANIMOUS WRITTEN CONSENT
## OF THE BOARD OF DIRECTORS
## OF
## SCHWARTZ FOUNDATION

The undersigned, constituting all of the directors of the Schwartz Foundation, a California nonprofit public benefit corporation, in accordance with the authority provided Section 5211(b) of the California Nonprofit Public Benefit Corporation Law, hereby adopt the following recitals and resolutions:

*Past Activities*

**WHEREAS** documentation of many Board actions over the course of years since 1983 is unavailable or unclear, and the directors now wish to ratify, confirm, and approve the actions of this corporation and its officers;

**NOW, THEREFORE, IT IS RESOLVED** that the following actions of the Board of Directors of this corporation are hereby ratified, approved, and confirmed, notwithstanding any defect or inadequacy in Board process or documentation of Board action at the time:

- Authorizing and directing the President, or an individual delegated by the President, to execute and file with the California Secretary of State, as required by law, the biennial Statement by Domestic Nonprofit Corporation required by the California Corporations Code, as well as payment of any fees or penalties associated with such filings;
- Annually electing the following directors who served during the dates set forth below:

> Robert A. D. Schwartz - incorporation until his death in 2017
> Thom R. Picarello - incorporation through 1983
> Donald C. Schwartz - incorporation through 1990
> Michael Osterberg - 1983 through 1990
> Debbra Schwartz - 1991 until her death in 2020
> Robert D. D. Schwartz  - 2007 and 2008
> Margot Schwartz - 2009 to present
> Noah Schwartz - 2020 to present

- Annually electing the following officers who served during the dates set forth below:

| | |
|---|---|
| President: | Robert A. D. Schwartz - incorporation until his death in 2017 |
| | Debbra Schwartz - 2018 until her death in 2020 |
| Vice President: | Donald C. Schwartz - 1983 to 1990 |
| Secretary: | Donald C. Schwartz - 1983 - 1990 |

<table>
<tr><td></td><td>Debbra Schwartz - 1991 to 2006<br>Robert D. D. Schwartz - 2007 to 2008<br>Margot Schwartz - 2009 to present</td></tr>
<tr><td>Treasurer/CFO:</td><td>Michael Osterberg - 1983 to 1990<br>Debbra Schwartz - 1991 to 2018<br>Margot Schwartz - 2018 to 2020<br>Noah Schwartz - 2020 to present</td></tr>
</table>

- Authorizing the removal and/or resignation of Donald Schwartz as director, Vice President, and Secretary of this corporation, effective December 31, 1990;
- Authorizing the removal and/or resignation of Michael Osterberg as director and Treasurer of this corporation, effective December 31, 1990;
- Authorizing the removal and/or resignation of Robert D. D. Schwartz as director and Secretary of this corporation, effective December 31, 2008;
- Engaging an accounting firm to prepare and file this corporation's annual federal and state tax returns, and legal counsel to review the same;
- Reviewing this corporation's annual tax returns, through the year ended December 31, 2019;
- Authorizing all direct charitable activity conducted in furtherance of this corporation's exempt purposes, including developing and implementing the Peer Tutoring Resource Center in Oakland beginning in 2012 and continuing to operate through present day, and The Therapists, a jazz band performing for the elderly in nursing and other residential facilities beginning in 2015; and
- Engaging and compensating all contractors and service providers to this corporation, as reported in applicable Forms 990-PF.

*Bylaws Amendment and Restatement*

**WHEREAS** the Board has determined that it is in the best interests of this corporation to amend its Bylaws to conform to current law and best practices;

**NOW, THEREFORE, IT IS RESOLVED** that the proposed amended and restated Bylaws attached hereto as Exhibit A (the "Amended Bylaws") are hereby approved, such Amended Bylaws to become effective immediately; and

**RESOLVED FURTHER** that the Secretary of this corporation is hereby directed to notify this corporation's tax preparer and provide a copy of the Amended Bylaws to him or her, to facilitate proper reporting of these changes to the applicable regulators.

*Officer Elections*

**WHEREAS** Margot Schwartz is currently the Secretary of this corporation and the position of President is vacant;

**NOW THEREFORE IT IS RESOLVED** that Margot Schwartz is

hereby removed from her position as Secretary, and is appointed as President of this corporation effective immediately; and

       **RESOLVED FURTHER** that Noah Schwartz is hereby affirmed as the Treasurer, appointed August 3, 2020, and is hereby appointed as Secretary of this corporation, effective immediately.

*Omnibus Resolutions*

       **RESOLVED FURTHER** that the officers of this corporation are hereby authorized and directed to take all such further actions as they may deem necessary or appropriate in order to implement the foregoing resolutions, and any actions heretofore taken by the officers to further the purposes of the foregoing resolutions prior to the date of this Unanimous Written Consent are hereby ratified, approved, and confirmed.

       **IN WITNESS WHEREOF**, each director has provided his or her written consent to the resolutions included in this Unanimous Written Consent as of the date set forth in the e-mail message sent by such director to margotduffyschwartz@gmail.com approving this Consent. Such execution may be in counterparts.


Directors:                              Margot Schwartz
                                         Noah Schwartz

# EXHIBIT C

**AMENDED AND RESTATED**

**BYLAWS**

**OF**

**SCHWARTZ FOUNDATION**

{00911235.DOCX; 2}

# TABLE OF CONTENTS

Article I        PRINCIPAL OFFICE ................................................................. 1

Article II       MEMBERSHIP........................................................................ 1

Article III      DESIGNATORS........................................................................ 1

Section 1.    Naming of Designators ......................................... 1
Section 2.    Actions of Designators ......................................... 1
Section 3.    Incapacity............................................................. 2
Section 4.    Authorization for Disclosure of Health Information ................... 2
Section 5.    Determination of Incapacity by the Board................... 2

Article IV     BOARD OF DIRECTORS ........................................................ 2

Section 1.    Powers .................................................................. 2
Section 2.    Number of Directors ............................................. 2
Section 3.    Limitations on Interested Persons ......................... 2
Section 4.    Designation and Term of Office of Directors ............................. 3
Section 5.    Vacancies............................................................. 3
Section 6.    Resignation and Removal ..................................... 3
Section 7.    Annual Meetings .................................................. 3
Section 8.    Special Meetings .................................................. 3
Section 9.    Notice .................................................................. 3
Section 10.   Waiver of Notice .................................................. 3
Section 11.   Quorum ................................................................ 4
Section 12.   Action Without a Meeting ..................................... 4
Section 13.   Telephone and Electronic Meetings.......................... 4
Section 14.   Standard of Care .................................................. 4
           A.     General................................................ 4
           B.     Investments ......................................... 5
Section 15.   Inspection ............................................................ 6
Section 16.   Director Compensation ......................................... 6
Section 17.   Executive Compensation Review .......................... 6

Article V      COMMITTEES........................................................................ 6

Section 1.    Board Committees ............................................... 6
Section 2.    Advisory Committees ........................................... 7
Section 3.    Committee Supervision and Reliance ................... 7
Section 4.    Audit Committee .................................................. 7
Section 5.    Meetings .............................................................. 8
           A.     Of Board Committees .......................... 8
           B.     Of Advisory Committees ...................... 8

Article VI     OFFICERS............................................................................. 8

Section 1.    Officers ................................................................ 8
Section 2.    Election ................................................................ 8
Section 3.    Removal ............................................................... 8

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| Section 4. | Resignation | 8 |
| Section 5. | Vacancies | 8 |
| Section 6. | Chair of the Board | 9 |
| Section 7. | President | 9 |
| Section 8. | President | 9 |
| Section 9. | Vice President | 9 |
| Section 10. | Secretary | 9 |
| Section 11. | Treasurer | 9 |
| Section 12. | Executive Director | 9 |
| Article VII | CERTAIN TRANSACTIONS | 10 |
| Section 1. | Loans | 10 |
| Section 2. | Self-Dealing Transactions | 10 |
| Section 3. | Approval | 10 |
| Section 4. | Compliance with Private Foundation Rules | 10 |
| Article VIII | INDEMNIFICATION AND INSURANCE | 11 |
| Section 1. | Right of Indemnity | 11 |
| Section 2. | Approval of Indemnity | 11 |
| Section 3. | Advancing Expenses | 11 |
| Section 4. | Insurance | 12 |
| Article IX | GRANTS ADMINISTRATION | 12 |
| Section 1. | Purpose of Grants | 12 |
| Section 2. | Board of Directors Oversight | 12 |
| Section 3. | Refusal; Withdrawal | 12 |
| Section 4. | Accounting | 12 |
| Section 5. | Restrictions on Contributions | 12 |
| Article X | MISCELLANEOUS | 13 |
| Section 1. | Fiscal Year | 13 |
| Section 2. | Contracts, Notes, and Checks | 13 |
| Section 3. | Annual Reports to Directors | 13 |
| Section 4. | Required Financial Audits | 13 |
| Section 5. | Electronic Transmissions | 14 |
| Section 6. | Amendments | 14 |
| Section 7. | Governing Law | 14 |

Case: 23-50372     Doc# 22     Filed: 05/22/23     Entered: 05/22/23 08:38:41     Page 29 of
78

# BYLAWS
## OF
## SCHWARTZ FOUNDATION

## ARTICLE I
## PRINCIPAL OFFICE

The principal office of this corporation shall be located in the state of California or in any other location to be determined by the Board of Directors.

## ARTICLE II
## MEMBERSHIP

This corporation shall have no voting members, but the Board of Directors may, by resolution, establish one or more classes of nonvoting members and provide for eligibility requirements for membership and rights and duties of members, including the obligation to pay dues.

## ARTICLE III
## DESIGNATORS

Section 1. <u>Naming of Designator</u>. The Designators referred to in these Bylaws shall be Margot Schwartz and Noah Schwartz. Each Designator shall serve for life or until the Designator resigns or becomes incapacitated, as defined in Section 3 below. After the death, incapacity, or resignation of the last remaining Designator, all rights reserved to the Designator under these Bylaws shall be exercised by the Board of Directors.

Section 2. <u>Actions of Designator</u>. Whenever there is more than one Designator, they shall hold the rights and powers granted to the Designators under these Bylaws jointly and shall act by majority vote. All actions of the Designators shall be evidenced by a writing signed by at least the majority of the Designators and delivered to an officer of this corporation, which shall be filed by the Secretary with the proceedings of the Board of Directors of this corporation. Any such writing may be signed in counterparts.

Section 3. <u>Incapacity</u>. A Designator's incapacity for purposes of these Bylaws shall be deemed to exist when it has been declared by a court of competent jurisdiction, or when a conservator for such Designator has been appointed, or upon execution of a certificate by a physician licensed to practice in the State of California or wherever such Designator may then reside, which states the doctor's opinion that such Designator is, by reason of advanced age, infirmity, mental or physical illness, or other disability, unable adequately to provide for his or her personal needs or to manage his or her financial affairs. The effective date of such incapacity shall be the date of the decree adjudicating the incapacity, the date of the decree appointing the conservator, or the date of the doctor's certificate, as the case may be.

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 30 of 78

Section 4.     Authorization for Disclosure of Health Information.  The Board of Directors may request in writing that a Designator provide to the Secretary of this corporation an Authorization for Use or Disclosure of Health Information (an "Authorization") in the form then required by applicable federal and state law, including if applicable the Health Information Portability and Accountability Act of 1996, authorizing such Designator's physician to examine the Designator and to disclose his or her physical or mental condition to this corporation in order to determine such Designator's incapacity or capacity for the purposes of these Bylaws.

Section 5.     Determination of Incapacity by the Board.  If a Designator fails to provide the Authorization within thirty days of receiving a written request from the Board of Directors, or if such Designator's physician refuses to honor such Authorization on the grounds that the Designator is not legally competent to execute an Authorization, the Board of Directors may make a determination of such Designator's incapacity or capacity for the purposes of these Bylaws based on its evaluation of the Designator's physical and mental condition.    Any determination by the Board of a Designator's incapacity shall be made by a majority of directors then in office, and the effective date of such incapacity shall be the date of the Board's action.

# ARTICLE IV
# BOARD OF DIRECTORS

Section 1.     Powers.   This corporation shall have powers to the full extent allowed by law.  All powers and activities of this corporation shall be exercised and managed by the Board of Directors of this corporation directly or, if delegated, under the ultimate direction of the Board.

Section 2.     Number of Directors.   The number of directors shall be not less than one (1) nor more than five (5), with the exact authorized number of directors to be fixed from time to time by action of the Desgnators.

Section 3.     Limitations on Interested Persons.  At all times, not more than 49% of the directors of this corporation may be interested persons.  An interested person means either:

(a)     any person currently being compensated by this corporation for services rendered to it within the previous twelve months, whether as a full-time or part-time employee, independent contractor, or otherwise, excluding any reasonable compensation paid to a director in his or her capacity as director; or

(b)     any brother, sister, ancestor, descendant, spouse, brother-in-law, sister-in-law, son-in-law, daughter-in-law, mother-in-law, or father-in-law of any such person.

Section 4.     Designation and Term of Office of Directors.  Except for the initial directors named by the incorporator, the directors of this corporation shall be designated by the Designators from time to time.  The effective date of any such designation shall be as provided therein.  Directors may be designated for any term prescribed in the written designation; if no such term is prescribed, a designated director shall serve until he or she resigns or is removed.

Section 5.    Vacancies.  A vacancy shall be deemed to exist on the Board in the event that the actual number of directors is less than the authorized number for any reason. Vacancies may be filled by the Designators for the unexpired portion of the term.

Section 6.    Resignation and Removal.  Resignations shall be effective upon receipt in writing by the President, or the Secretary of this corporation, unless a later effective date is specified in the resignation.  The Board of Directors, by the vote of a majority of the directors then in office, or the Designators, may remove without cause any director at any time provided that any such removal by the Board shall be effective only with the consent of the Designators.

Section 7.    Annual Meetings.  A meeting of the Board of Directors shall be held at least once a year.  Annual meetings shall be called by the President, or any two directors, and noticed in accordance with Section 9.

Section 8.    Special Meetings.  Special meetings of the Board of Directors may be called by the President, or any two directors, and noticed in accordance with Section 9.

Section 9.    Notice.  Notice of the annual meeting and any special meetings of the Board of Directors shall state the date, place, and time of the meeting and shall be given to each director at least four days before any such meeting if given by first-class mail or forty-eight hours before any such meeting if given personally or by telephone, including a voice messaging system, or by other electronic transmission such as e-mail, in compliance with Article X, Section 5 of these Bylaws.

Section 10.    Waiver of Notice.  The transactions of any meeting of the Board of Directors, however called and noticed and wherever held, shall be valid as though taken at a meeting duly held after proper call and notice, if a quorum is present, and if, either before or after the meeting, each of the directors not present provides a waiver of notice, a consent to holding the meeting, or an approval of the minutes in writing.  The waiver of notice or consent need not specify the purpose of the meeting.  All waivers, consents and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.  Notice of a meeting shall also be deemed given to any director who attends the meeting without protesting the lack of adequate notice before the meeting or at its commencement.

Section 11.    Quorum.  A majority of the total number of directors then in office shall constitute a quorum, provided that in no event shall the required quorum be less than one-fifth of the authorized number of directors or two directors, whichever is larger.  The act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, except as otherwise provided in Article III, Section 5 (determining Designator incapacity); Article IV, Section 6 (removing directors) and Section 12 (taking action without a meeting); Article V, Section 1 (appointing Board Committees); Article VII, Section 3 (approving self-dealing transactions); Article VIII, Section 2 (approving indemnification); and Article X, Section 6 (amending Bylaws), of these Bylaws or in the California Nonprofit Public Benefit Corporation Law.  A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for such meeting.

Section 12.    Action Without a Meeting.  Any action required or permitted to be taken by the Board may be taken without a meeting if all members of the Board shall individually or collectively consent to such action in writing.  Such written consents shall be filed with the minutes of the proceedings of the Board, and shall have the same force and effect as the unanimous vote of such directors.

Section 13.    Telephone and Electronic Meetings.  Directors may participate in a meeting through use of conference telephone, electronic video screen communication, or other electronic transmission in compliance with Article X, Section 5 of these Bylaws so long as all of the following apply:

(a)    each director participating in the meeting can communicate with all of the other directors concurrently, and

(b)    each director is provided with the means of participating in all matters before the Board, including the capacity to propose, or to interpose an objection to, a specific action to be taken by the corporation.

Section 14.    Standard of Care.

A.    General.  A director shall perform the duties of a director, including duties as a member of any Board Committee on which the director may serve, in good faith, in a manner such director believes to be in the best interest of this corporation and with such care, including reasonable inquiry, as an ordinarily prudent person in a like situation would use under similar circumstances.

In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by:

(i)    one or more officers or employees of this corporation whom the director believes to be reliable and competent as to the matters presented;

(ii)    counsel, independent accountants, or other persons as to matters which the director believes to be within such person's professional or expert competence; or

(iii)    a committee upon which the director does not serve that is composed exclusively of any combination of directors or persons described in (i) or (ii) above, as to matters within the committee's designated authority, provided that the director believes such committee merits confidence;

so long as in any such case, the director acts in good faith after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted.

Except as provided in Article VII below, a person who performs the duties of a director in accordance with this Section shall have no liability based upon any failure or alleged failure to discharge that person's obligations as a director, including, without limiting the

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 33 of 78

generality of the foregoing, any actions or omissions which exceed or defeat a public or charitable purpose to which a corporation, or assets held by it, are dedicated.

B.    Investments.  Except with respect to assets held for use or used directly in carrying out this corporation's public or charitable activities, in managing and investing this corporation's investments, the Board shall adhere to the standards set forth in the preceding paragraph, and shall: (a) consider the charitable purposes of this corporation; (b) act in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances; and (c) consider:

(1)    General economic conditions;

(2)    The possible effect of inflation or deflation;

(3)    The expected tax consequences, if any, of investment decisions or strategies;

(4)    The role that each investment or course of action plays within the overall portfolio;

(5)    The expected total return from income and appreciation of investments;

(6)    This corporation's other resources;

(7)    The needs of this corporation to make distributions and to preserve capital;

(8)    An asset's special relationship or special value, if any, to the charitable purposes of this corporation.

Board decisions about an individual investment shall be made not in isolation but rather in the context of this corporation's portfolio of investments as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to this corporation.

Notwithstanding the above, no investment violates this section where it conforms to: (a) the intent of the donor as expressed in a gift instrument; or (b) provisions authorizing such investment contained in an instrument or agreement pursuant to which the assets were contributed to this corporation.

Section 15.    Inspection.  Every director shall have the absolute right at any reasonable time to inspect and copy all books, records, and documents, and to inspect the physical properties of this corporation.

Section 16.    Director Compensation.  The Board of Directors may authorize, by resolution, the payment to a director of reasonable compensation for services as a director.  The Board may authorize the advance or reimbursement to a director of actual reasonable expenses incurred in carrying out his or her duties as a director, such as for attending meetings of the Board and Board Committees.

Section 17.    <u>Executive Compensation Review</u>.  The Board of Directors (or a Board Committee) shall review any compensation packages (including all benefits) of the President or the chief executive officer and the Treasurer or chief financial officer, regardless of job title, and shall approve such compensation only after determining that the compensation is just and reasonable.  This review and approval shall occur when such officer is hired, when the term of employment of such officer is renewed or extended, and when the compensation of such officer is modified, unless the modification applies to substantially all of the employees of this corporation.

# ARTICLE V
# COMMITTEES

Section 1.    <u>Board Committees</u>.  The Board of Directors may, by resolution adopted by a majority of the directors then in office, create any number of Board Committees, each consisting of two or more directors, and only of directors, to serve at the pleasure of the Board.  Appointments to any Board Committee shall be by a majority vote of the directors then in office.  Board Committees may be given all the authority of the Board, except for the powers to:

(a)    set the number of directors within a range specified in these Bylaws;

(b)    elect directors or remove directors without cause;

(c)    fill vacancies on the Board of Directors or on any Board Committee;

(d)    fix compensation of directors for serving on the Board or any Board Committee;

(e)    amend or repeal these Bylaws or adopt new Bylaws;

(f)    adopt amendments to the Articles of Incorporation of this corporation;

(g)    amend or repeal any resolution of the Board of Directors which by its express terms is not so amendable or repealable;

(h)    create any other Board Committees or appoint the members of any Board Committees; or

(i)    approve any merger, reorganization, voluntary dissolution, or disposition of substantially all of the assets of this corporation.

Section 2.    <u>Advisory Committees</u>.  The Board of Directors may establish one or more Advisory Committees to the Board.  The members of any Advisory Committee may consist of directors or non-directors and may be appointed as the Board determines.  Advisory committees may not exercise the authority of the Board to make decisions on behalf of this corporation, but shall be restricted to making recommendations to the Board or Board

Case: 23-50372    Doc# 22    Filed: 05/22/23    Entered: 05/22/23 08:38:41    Page 35 of 78

Committees, and implementing Board or Board Committee decisions and policies under the supervision and control of the Board or Board Committee.

Section 3. <u>Committee Supervision and Reliance</u>. If a committee is composed and appointed as required by Section 1 above (concerning Board Committees), it may act with the authority of the Board to the extent and with the scope provided by the Board. Otherwise, the Board of Directors shall remain responsible for oversight and supervision of the committee as an Advisory Committee. If a committee meets the criteria of Article IV, Section 14.A.(iii), the individual directors may rely on it in discharging their fiduciary duties as provided in that Section.

Section 4. <u>Audit Committee</u>. For any tax year in which this corporation has gross revenues of $2 million or more, this corporation shall have an Audit Committee whose members shall be appointed by the Board of Directors, and who may include both directors and non-directors, subject to the following limitations: (a) members of the Finance Committee, if any, shall constitute less than one-half of the membership of the Audit Committee; (b) the chair of the Audit Committee may not be a member of the Finance Committee, if any; (c) the Audit Committee may not include any member of the staff, including the President or chief executive officer and Treasurer or chief financial officer; (d) the Audit Committee may not include any person who has a material financial interest in any entity doing business with this corporation; and (e) Audit Committee members who are not directors may not receive compensation greater than the compensation paid to directors for their Board service.

The Audit Committee shall: (1) recommend to the full Board of Directors for approval the retention and, when appropriate, the termination of an independent certified public accountant to serve as auditor, (2) subject to approval of the full Board, negotiate the compensation of the auditor on behalf of the Board, (3) confer with the auditor to satisfy the Audit Committee members that the financial affairs of this corporation are in order, (4) review and determine whether to accept the audit, and (5) approve performance of any non-audit services provided to this corporation by the auditor's firm.

Section 5. <u>Meetings</u>.

A. <u>Of Board Committees</u>. Meetings and actions of Board Committees shall be governed by and held and taken in accordance with the provisions of Article IV of these Bylaws concerning meetings and actions of the Board of Directors, with such changes in the content of those Bylaws as are necessary to substitute the Board Committee and its members for the Board of Directors and its members. Minutes shall be kept of each meeting of any Board Committee and shall be filed with the corporate records.

B. <u>Of Advisory Committees</u>. Subject to the authority of the Board of Directors, Advisory Committees may determine their own meeting rules and whether minutes shall be kept.

The Board of Directors may adopt rules for the governance of any Board or Advisory Committee not inconsistent with the provisions of these Bylaws.

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 36 of 78

## ARTICLE VI
## OFFICERS

Section 1.    <u>Officers</u>.  The officers of this corporation shall be a President, a Secretary, and a Treasurer.  The corporation may also have, at the discretion of the directors, such other officers as may be appointed by the Board of Directors.  Any number of offices may be held by the same person, except that the Secretary, the Treasurer, or the Chief Financial Officer, if any, may not serve concurrently as the President or Chair of the Board, if any.  The President shall be elected from among the directors of the corporation.

Section 2.    <u>Election</u>.  Except for the initial officers appointed by the incorporator, the officers of this corporation shall be elected annually by the Board of Directors, and each shall serve at the pleasure of the Board, subject to the rights, if any, of an officer under any contract of employment.

Section 3.    <u>Removal</u>.  Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, with or without cause, by the Board of Directors or by an officer on whom such power of removal may be conferred by the Board of Directors.

Section 4.    <u>Resignation</u>.  Any officer may resign at any time by giving written notice to this corporation.  Any resignation shall take effect on receipt of that notice by any other officer than the person resigning or at any later time specified by that notice and, unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective.  Any resignation is without prejudice to the rights, if any, of this corporation under any contract to which the officer is a party.

Section 5.    <u>Vacancies</u>.  A vacancy in any office for any reason shall be filled in the same manner as these Bylaws provide for election to that office.

Section 6.    <u>President</u>.  The President shall be the chief executive officer of this corporation and shall, subject to control of the Board, generally supervise, direct and control the business and other officers of this corporation.  The President shall preside at all meetings of the Board of Directors.  The President shall have the general powers and duties of management usually vested in the office of president of the corporation and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 7.    <u>Secretary</u>.  The Secretary shall supervise the keeping of a full and complete record of the proceedings of the Board of Directors and its committees, shall supervise the giving of such notices as may be proper or necessary, shall supervise the keeping of the minute books of this corporation, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 8.    <u>Treasurer</u>.  The Treasurer shall be the chief financial officer of this corporation and shall supervise the charge and custody of all funds of this corporation, the deposit of such funds in the manner prescribed by the Board of Directors, and the keeping and maintaining of adequate and correct accounts of this corporation's properties and business

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 37 of 78

transactions, shall render reports and accountings as required, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

## ARTICLE VII
## CERTAIN TRANSACTIONS

Section 1.  Loans.  Except as permitted by Section 5236 of the California Nonprofit Public Benefit Corporation Law, this corporation shall not make any loan of money or property to, or guarantee the obligation of, any director or officer; provided, however, that this corporation may advance money to a director or officer of this corporation or any subsidiary for expenses reasonably anticipated to be incurred in performance of the duties of such director or officer so long as such individual would be entitled to be reimbursed for such expenses absent that advance.

Section 2.  Self-Dealing Transactions.  Except as provided in Section 3 below, the Board of Directors shall not approve, or permit the corporation to engage in, any self-dealing transaction.  A self-dealing transaction is a transaction to which this corporation is a party and in which one or more of its directors has a material financial interest, unless the transaction comes within California Corporations Code Section 5233(b).

Section 3.  Approval.  This corporation may engage in a self-dealing transaction if the transaction is approved by a court or by the Attorney General.  This corporation may also engage in a self-dealing transaction if the Board determines, before the transaction, that (a) this corporation is entering into the transaction for its own benefit; (b) the transaction is fair and reasonable to this corporation at the time; and (c) after reasonable investigation, the Board determines that it could not have obtained a more advantageous arrangement with reasonable effort under the circumstances.  Such determinations must be made by the Board in good faith, with knowledge of the material facts concerning the transaction and the director's interest in the transaction, and by a vote of a majority of the directors then in office, without counting the vote of the interested director or directors.

Where it is not reasonably practicable to obtain approval of the Board before entering into a self-dealing transaction, a Board Committee may approve such transaction in a manner consistent with the requirements above; provided that, at its next meeting, the full Board determines in good faith that the Board Committee's approval of the transaction was consistent with the requirements above and that it was not reasonably practical to obtain advance approval by the full Board, and ratifies the transaction by a majority of the directors then in office without the vote of any interested director.

Section 4.  Compliance with Private Foundation Rules.  Any provision of these Bylaws or the Articles of Incorporation of this corporation to the contrary notwithstanding, so long as this corporation is deemed to be a "private foundation" as defined in Section 509 of the Internal Revenue Code of 1986, as amended (the "Code"), this corporation:

(a)  shall distribute its income for each taxable year (and principal, if necessary) at such time and in such manner as not to subject this corporation to tax under Section 4942 of the Code;

(b)     shall not approve of, or engage in, any act of self-dealing as defined in subsection (d) of Section 4941 of the Code;

(c)     shall not retain any excess business holdings as defined in subsection (c) of Section 4943 of the Code;

(d)     shall not make any investments in such a manner as to subject this corporation to tax under Section 4944 of the Code; and

(e)     shall not make any taxable expenditure as defined in subsection (d) of Section 4945 of the Code.

## ARTICLE VIII
## INDEMNIFICATION AND INSURANCE

Section 1.     <u>Right of Indemnity</u>.  To the fullest extent allowed by Section 5238 of the California Nonprofit Public Benefit Corporation Law, this corporation shall indemnify its agents, in connection with any proceeding, and in accordance with Section 5238.  For purposes of this Article, "agent" shall have the same meaning as in Section 5238(a), including directors, officers, employees, other agents, and persons formerly occupying such positions; "proceeding" shall have the same meaning as in Section 5238(a), including any threatened action or investigation under Section 5233 or brought by the Attorney General; and "expenses" shall have the same meaning as in Section 5238(a), including reasonable attorneys' fees.

Section 2.     <u>Approval of Indemnity</u>.  On written request to the Board of Directors in each specific case by any agent seeking indemnification, to the extent that the agent has been successful on the merits, the Board shall promptly authorize indemnification in accordance with Section 5238(d).  Otherwise, the Board shall promptly determine, by a majority vote of a quorum consisting of directors who are not parties to the proceeding, whether, in the specific case, the agent has met the applicable standard of conduct stated in Section 5238(b) or Section 5238(c), and, if so, shall authorize indemnification to the extent permitted thereby.

Section 3.     <u>Advancing Expenses</u>.  The Board of Directors may authorize the advance of expenses incurred by or on behalf of an agent of this corporation in defending any proceeding prior to final disposition, if the Board finds that:

(a)     the requested advances are reasonable in amount under the circumstances; and

(b)     before any advance is made, the agent will submit a written undertaking satisfactory to the Board to repay the advance unless it is ultimately determined that the agent is entitled to indemnification for the expenses under this Article.

The Board shall determine whether the undertaking must be secured, and whether interest shall accrue on the obligation created thereby.

Case: 23-50372     Doc# 22     Filed: 05/22/23     Entered: 05/22/23 08:38:41     Page 39 of 78

Section 4.    <u>Insurance</u>.    The Board of Directors may adopt a resolution authorizing the purchase of insurance on behalf of any agent against any liability asserted against or incurred by the agent in such capacity or arising out of the agent's status as such, and such insurance may provide for coverage against liabilities beyond this corporation's power to indemnify the agent under law.

## ARTICLE IX
## GRANTS ADMINISTRATION

Section 1.    <u>Purpose of Grants</u>.  This corporation shall have the power to make grants and contributions and to render other financial assistance for the purposes expressed in this corporation's Articles of Incorporation.

Section 2.    <u>Board of Directors Oversight</u>.    The Board of Directors shall exercise itself, or delegate, subject to its supervision, control over grants, contributions, and other financial assistance provided by this corporation.    The Board shall approve a process for reviewing and approving or declining all requests for funds made to this corporation, which shall require such requests to specify the use to which the funds will be put, and include a mechanism for regular Board review of all grants made.  The Board shall similarly approve a process for authorizing payment of duly approved grants to the approved grantee.

Section 3.    <u>Refusal; Withdrawal</u>.    The Board of Directors, in its absolute discretion, shall have the right to refuse to make any grants or contributions, or to render other financial assistance, for any or all of the purposes for which the funds are requested.  In addition, the Board, in its absolute discretion, shall have the right to withdraw its approval of any grant at any time and use the funds for other purposes within the scope of the purposes expressed in this corporation's Articles of Incorporation, subject to any rights of third parties under any contract relating to such grant.

Section 4.    <u>Accounting</u>.  The Board of Directors shall determine under what circumstances to require that grantees furnish a periodic accounting to show that the funds granted by this corporation were expended for the purposes that were approved by the Board.

Section 5.    <u>Restrictions on Contributions</u>.  Unless otherwise determined by resolution of the Board of Directors in particular cases, this corporation shall retain complete control and discretion over the use of all contributions it receives, subject only to any charitable trust restrictions that apply to such contributions, and all contributions received by this corporation from solicitations for specific grants shall be regarded as for the use of this corporation and not for any particular organization or individual mentioned in the solicitation.

## ARTICLE X
## MISCELLANEOUS

Section 1.    <u>Fiscal Year</u>.  The fiscal year of this corporation shall end each year on December 31.

Section 2.    Contracts, Notes, and Checks.  All contracts entered into on behalf of this corporation must be authorized by the Board of Directors or the person or persons on whom such power may be conferred by the Board from time to time, and, except as otherwise provided by law, every check, draft, promissory note, money order, or other evidence of indebtedness of this corporation shall be signed by the person or persons on whom such power may be conferred by the Board from time to time.

Section 3.    Annual Reports to Directors.  The chief executive officer shall furnish an annual written report to all directors of this corporation containing the following information about this corporation's previous fiscal year:

(a)    the assets and liabilities, including the trust funds of this corporation, as of the end of the fiscal year;

(b)    the principal changes in assets and liabilities, including trust funds, during the fiscal year;

(c)    the revenue or receipts of this corporation, both unrestricted and restricted to particular purposes, for the fiscal year;

(d)    the expenses or disbursements of this corporation, for both general and restricted purposes, for the fiscal year; and

(e)    any transaction during the previous fiscal year involving more than $50,000 between this corporation (or its parent or subsidiaries, if any) and any of its directors or officers (or the directors or officers of its parent or subsidiaries, if any) or any holder of more than ten percent of the voting power of this corporation or its parent or subsidiaries, if any, or any of a number of such transactions in which the same person had a direct or indirect material financial interest, and which transactions in the aggregate involved more than $50,000, as well as the amount and circumstances of any indemnifications or advances aggregating more than $10,000 paid during the fiscal year to any director or officer of this corporation.  For each transaction, the report must disclose the names of the interested persons involved in such transaction, stating such person's relationship to this corporation, the nature of such person's interest in the transaction and, where practicable, the value of such interest.

The foregoing report shall be accompanied by any report thereon of independent accountants or, if there is no such report, the certificate of an authorized officer of this corporation that such statements were prepared without an audit from the books and records of this corporation.   The report and any accompanying material may be sent by electronic transmission in compliance with Article X, Section 5 of these Bylaws.

Section 4.    Required Financial Audits.  This corporation shall obtain a financial audit for any tax year in which it receives or accrues gross revenue of $2 million or more, excluding grant or contract income from any governmental entity for which the governmental entity requires an accounting.  Whether or not they are required by law, any audited financial statements obtained by this corporation shall be made available for inspection by the Attorney General and the general public within nine months after the close of the fiscal year to which the statements relate, and shall remain available for three years (1) by making

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 41 of 78

them available at this corporation's principal, regional, and district offices during regular business hours and (2) either by mailing a copy to any person who so requests in person or in writing or by posting them on this corporation's website.

Section 5.    <u>Electronic Transmissions</u>.    Unless otherwise provided in these Bylaws, and subject to any guidelines and procedures that the Board of Directors may adopt from time to time, the terms "written" and "in writing" as used in these Bylaws include any form of recorded message in the English language capable of comprehension by ordinary visual means, and may include electronic transmissions, such as facsimile or email, provided (i) for electronic transmissions from the corporation, the corporation has obtained an unrevoked written consent from the recipient to the use of such  means of communication; (ii) for electronic transmissions to the corporation, the corporation has in effect reasonable measures to verify that the sender is the individual purporting to have sent such transmission; and (iii) the transmission creates a record that can be retained, retrieved, reviewed, and rendered into clearly legible tangible form.

Section 6.    <u>Amendments</u>.    Proposed amendments to these Bylaws shall be submitted in writing to the directors at least one week in advance of any Board meeting at which they will be considered for adoption.  The vote of a majority of directors then in office or the unanimous written consent of the directors shall be required to adopt a bylaw amendment; provided, however, that no amendment to these Bylaws shall take effect without the written consent of the Designators.

Section 7.    <u>Governing Law</u>.    In all matters not specified in these Bylaws, or in the event these Bylaws shall not comply with applicable law, the California Nonprofit Public Benefit Corporation Law as then in effect shall apply.

Case: 23-50372    Doc# 22    Filed: 05/22/23    Entered: 05/22/23 08:38:41    Page 42 of 78

## CERTIFICATE OF SECRETARY

I, Noah Schwartz, certify that I am presently the duly elected and acting Secretary of the Schwartz Foundation, a California nonprofit public benefit corporation, and that the above Bylaws, consisting of thirteen (13) pages, are the Bylaws of this corporation as adopted by unanimous written consent of the Board of Directors, on   August 27TH, 2020 .

DATED:   August 27TH 2020

_____
Noah Schwartz, Secretary

{00911235.DOCX; 2}

# EXHIBIT D



**California Secretary of State**
Electronic Certified Copy

I, ALEX PADILLA, Secretary of State of the State of California, hereby certify that the attached transcript of 2 pages is a full, true and correct copy of the original record in the custody of the California Secretary of State's office.



**IN WITNESS WHEREOF**, I execute this certificate and affix the Great Seal of the State of California on this day of September 13, 2020

**ALEX PADILLA**
**Secretary of State**

Verification Number:   P9B9QXP
Entity (File) Number:   C0967388

To verify the issuance of this Certificate, use the Verification Number above with the Secretary of State Electronic Verification Search available at *bizfile.sos.ca.gov*

 **California Secretary of State**
Electronic Filing



Certificate Verification Number: P9B9QXP
Use bizfile.sos.ca.gov to verify the certified copy.

# Corporation - Statement of Information

**Entity Name:** SCHWARTZ FOUNDATION

| | |
|---:|:---|
| Entity (File) Number: | C0967388 |
| File Date: | 09/11/2020 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GJ42219 |

**Detailed Filing Information**

1. Entity Name:

   SCHWARTZ FOUNDATION

2. Business Addresses:
   a. Street Address of Principal
      Office in California:

      14665 Washington Avenue #26
      San Leandro, California 94578
      United States of America

   b. Mailing Address:

      14665 Washington Avenue #26
      San Leandro, California 94578
      United States of America

3. Officers:
   a. Chief Executive Officer:

      Margot Duffy Schwartz
      2822 Hillegass Avenue
      Berkeley, California 94705
      United States of America

   b. Secretary:

      Noah Alexander Schwartz
      2822 Hillegass Avenue
      Berkeley, California 94705
      United States of America

Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.

Case: 23-50372   Doc# 22   Filed: 05/22/23   Entered: 05/22/23 08:38:41   Page 46 of 78

Document ID: GJ42219

## California Secretary of State
### Electronic Filing

Officers (Cont'd):

   c.  Chief Financial Officer:

                                Noah Alexander Schwartz
                                2822 Hillegass Avenue
                                Berkeley, California 94705
                                United States of America

4.  Agent for Service of Process:

                                Erik  Dryburgh
                                135 Main Street, 20th Floor
                                San Francisco, California 94105
                                United States of America

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   Max Meregillano

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Certificate Verification Number: P9B9QXP
Use bizfile.sos.ca.gov to verify the certified copy.

Document ID: GJ42219

# EXHIBIT E

## New iMessage <span>Cancel</span>

To: Don Schwartz

iMessage
Wed, Aug 5, 12:26 AM

Hello Margot - Brother Don here. Hope Noah and you are doing well. I am so sorry for your loss. We have all lost both parents in recent years. I cried silently at my desk over our Pops, I miss him so much. And I cried openly when my mom passed. She was so sweet. Please let's talk briefly in the morning. Thanks.



Wed, Aug 5, 12:09 PM

Hey Don, sorry I missed your call. Thanks so much for the message. Yes, it's been very hard the past few weeks. We're all pretty shaken up- this was a shock for everyone and she was much too young for something like this to happen. I'm traveling today so it's not really a

iMessage

  

      

Case: 23-50372    Doc# 22    Filed: 05/22/23    Entered: 05/22/23 08:38:41    Page 49 of 78



3:47

**New iMessage**                    Cancel

To: Don Schwartz

Wed, Aug 5, 12:09 PM

> Hey Don, sorry I missed your call. Thanks so much for the message. Yes, it's been very hard the past few weeks. We're all pretty shaken up- this was a shock for everyone and she was much too young for something like this to happen. I'm traveling today so it's not really a good time to talk. I'll be in touch when I get back to town. Thanks for your understanding!

OK - safe travels

Very important we talk - briefly

Wed, Aug 12, 10:31 PM

Not contacting me is a bad decision

Thu, Aug 13, 12:56 PM

> Didn't forget about you, still on the road. Will be in touch soon!

iMessage

  

      

# EXHIBIT F

**From:** **Donald Schwartz** donald@lawofficedonaldschwartz.com
**Subject:** Re: Schwartz Zoom meeting
**Date:** August 23, 2020 at 6:06 PM
**To:** Margot Schwartz margotduffyschwartz@gmail.com
**Cc:** David Schwartz bigdave469@gmail.com, Noah Schwartz elschwartzo@gmail.com, paul@schwartzco.biz, rob@edenrocapartments.com

There is some more information that has been dumped in my lap.

I will be sending under separate cover.

Don

Sent from my iPhone

> On Aug 23, 2020, at 3:42 PM, Margot Schwartz <margotduffyschwartz@gmail.com> wrote:
>
> Don,
>
> Thank you for sharing these ideas with us.
>
> We understand what you are proposing, and while we certainly agree about the merits of a cohesive family unit, we need to let you know unequivocally that we are not interested in participating in this course of action. There is absolutely no doubt in either of our minds that dad's Trust was set up — and continues to be in the process of functioning — exactly as he intended.
>
> Was there anything else you would like to discuss on Tuesday? Of course we are still happy to get together.
>
> M & N
>
> > On Sat, Aug 22, 2020 at 6:38 PM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
> > More:
> >
> > Mr. Corrinet prefers that we meet as family first and decide what we are doing. So he's out of the call.
> >
> > Don
> >
> > Sent from my iPhone
> >
> > > On Aug 22, 2020, at 2:15 PM, Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
> > >
> > > Oh, I forgot to add that Noah has a great business mind (obviously) as do you - and both of you are extremely creative, i.e., right brain!
> > >
> > > We all bring a lot to the table. And we all work well together. What more is there to live for?
> > >
> > > And, as you may be thinking of law school, what better platform upon which to apply newfound legal knowledge than our own Schwartz Asset Portfolio? One thing about working with dad was that we were all exposed to legal-technical-financial issues that we would otherwise never have seen - and failure was never an option. One thing about Dad is that he wanted us all to continue to learn, he was the great hands-on teacher: Peer Teacher.
> > >
> > > And - if you are uncomfortable with Mr. Corrinet, we can save him for another day. (He's harmless and doesn't bite! I actually work with him on many other projects, some might even blow your mind!)
> > >
> > > Love, Don
> > >
> > > > On Sat, Aug 22, 2020 at 1:41 PM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
> > > > Hi Margot,
> > > >
> > > > Great question!!
> > > >
> > > > First, and most importantly, we all wish to express our deepest, heartfelt condolences to Noah and you for the sudden loss of your mother (i.e., our step-mother - or as my kids say: "close-by grandmother" - since we also had a "far-away grand-mother" Kathryn). I know that my boys (Charlie especially) are very upset about losing another family member.

Life is short. When you get to the age of your oldest siblings (meaning the oldest 4 of us 7), you come to realize life is short. Money is not everything, or even anything perhaps, yet money provides a vehicle to express our common Schwartz values. Which brings us to coming together to decide how we all want the rest of our time on this planet to look like, as well as to another question:

Do we want a super- capitalized Schwartz Foundation or do we want more individual control over such funds (which could also be directed to the Foundation later, if desired).

Are there options?

No one expected your mom to live such a short time after our Pops passed, certainly not your mom or our Pops. Possibly, the idea was that your mom could build her estate over many years and pass it as she saw fit in her estate plan (Noah and you). She would have many years to do so. Her unexpected passing curtailed that plan. Many folks (and all 5 other Schwartzs) believe that it is best for Noah (and his son) and you to have your own control of the capital Eden Roc and Terrace Garden represent for the remainder of your lives and start building (or continue building) your own estates - with all other 5 Schwartz's together.

Query No. 1: What options do we have under the existing "RADS Trust" document? (I have talked to all 5 'other' Schwartz's and they have expressed a desire to have an attorney opine to all of us what the options could be.)

So . . . Mr. Corrinet is not representing anyone. As an attorney who practices probate law in California, he would be making a voluntary appearance to express his ideas on how various options might be achieved.

The threshold issue is basically to Noah and you: assuming the RADS Trust gives Eden Roc and Terrace Garden to the Schwartz Foundation, are you guys satisfied with such a result?

I would think not and I hope not. Thusly, two more specific questions arise:

Question [1]: Is the Trust 'stuck' with Mechanics Bank as the Trustee?

Question [2]: Is everyone 'stuck' with the Schwartz Foundation getting the two apartment projects?

Question [3] Is there any benefit to Margot and Noah (and everyone else) to substituting both the Trustee and the beneficiary(ies)?

I have been researching these issues and discussing Question [1] with Mr. Corrient. (We have not broached [2] because no one knew the answer at the time that I spoke with him and I had to do some legal research on my own.

The bottom line is: Question [1]: If **ALL** seven Schwartz siblings agree that no Trustee is necessary (because we all agree on important Trust matters) then the Trustee can be replaced to a Trustee(s) of our own choosing. The reason is that there is no need for a Trustee since we all agree to the basic issues related to the Trust, such as who the replacement Trustee(s) would be or how to select her/him/it, by vote presumably. (Paying for a Trustee is a form of "waste" - meaning it is wasteful to have a third party Trustee and to be paying for the same.)

As to Question [2]: Frankly, I have yet to discuss this with Mr. Corrinet, but I have done some legal research and it is quite evident that the answer is the same thing: If **ALL** seven Schwartz siblings agree, then the beneficiary can be changed as well - meaning to ourselves or our designee(s).

In other words, **if we all agree, then we can get control of the Trust ourselves and directly benefit therefrom.**

What this means is that we would have a pool of cash-flow from which to do other projects and continue on as we have been for the past many decades, e.g., making money for Schwartzs. There is a long, very long, history of how Rob, Stev, Paul, David and I have toiled over those apartments (and the various other businesses through time) and made them what they are today, or could have been. None of us wish to simply have all of this whisked away when we can continue to work as diligently as we all have and continue to make the Schwartz Asset Portfolio far bigger and more profitable than it even is today.

And, the other good news is: we all get to work together. I believe that all of us enjoy working together. There is an extra spring in all our steps when we know we are working for the betterment of the whole: All for one and one for all. If there is anything our father would want is for all of us to get together and determine our own destiny. If he is watching us from afar, he would be very, very inspired by us all banding together to chart our own path - together. And it makes sense: each of us brings a unique talent to the talent pool, the ensemble, if you will. Rob is the great communicator, business management mind and a person of steller moral values and a person in whom we all place all our complete faith. Stev is also a man of great moral character and a rock of ethical duty - a hard worker. Paul is the tech genius, with multiple other interests worth noting. David has his own tech skills (different than Paul's) and a strong moral, trustworthy person. I have been the outside General Counsel of all of this for some 25 years, i.e., did all of Dad's legal work. Everyone's legal work, it seems.

So, give it some thought and let's continue to discuss. I know this is a lot to take-in all at once. There are some other ancillary issues and I will leave those for another day.

"Life is for the living" Bob Schwartz

Best,

Donald Charles Schwartz, MBA, JD

On Sat, Aug 22, 2020 at 11:57 AM Margot Schwartz <margotduffyschwartz@gmail.com> wrote:
> Hi Don,
>
> Who is Mr. Corrinet planning to represent?
>
> When we spoke on the phone a couple weeks ago, you were adamant about the importance of our meeting including "only Schwartzes". We are really looking forward to this chance to get the family together without outside involvement.
>
> M & N
>
> On Sat, Aug 22, 2020 at 1:25 AM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
>> I don't see the zoom invite.
>>
>> Can you also invite Mark Corrinet. He's a Trust attorney. See email.
>>
>> Stev has no functioning email right now. I'll be with him.
>>
>> Thanks.
>>
>> Donald Charles Schwartz, M.B.A., J.D.
>> Office of Donald C. Schwartz
>> 7960-B Soquel Drive, No. 291
>> Aptos, CA 95003
>> donald@lawofficedonaldschwartz.com
>> (831) 331-9909/Fax: (815) 301-6556
>>
>> Sent from iPhone
>>
>>> On Aug 19, 2020, at 6:36 PM, Margot Schwartz <margotduffyschwartz@gmail.com> wrote:
>>>
>>> I can do it but I will need Stev's email address if someone has it?
>>>
>>> On Wed, Aug 19, 2020 at 6:22 PM Donald Schwartz <donald@lawofficedonaldschwartz.com> wrote:
>>>> David says 7:00 p.m. on the 25th (August)
>>>>
>>>> Who will host the Zoom meeting and send out invites?
>>>>
>>>> Donald Charles Schwartz, MBA, JD
>>>>
>>>> On Sat, Aug 15, 2020 at 11:41 AM Margot Schwartz <margotduffyschwartz@gmail.com> wrote:
>>>>> Hello fellow Schwartzes!
>>>>>
>>>>> Hope you are well. Don mentioned you're interested in getting together — we don't seem to have Stev's email address so hopefully someone can forward this to him. Does next Tuesday the 25 work for all of you? We're looking forward to seeing everyone!
>>>>>
>>>>> Margot and Noah

# EXHIBIT G

From: **Donald Schwartz** <donald@lawofficedonaldschwartz.com>
Date: Sun, Aug 23, 2020 at 4:16 PM
Subject: RADS Estate
To: Margot Schwartz <margotduffyschwartz@gmail.com>, Mr. Noah Alexander Schwartz
<elschwartzo@gmail.com>
CC: Mr. Rob D Schwartz <schwartztribe@yahoo.com>, David Schwartz
<bigdave469@gmail.com>, Paul Schwartz <paul@schwartzco.biz>


Margot and Noah,

I am very sorry to have to send this to you. See attached.

I gave you an opportunity to do the right thing. You are choosing otherwise.

I was provided this declaration (I have redacted) which caused me to start looking at some other things and, yes, some other things have surfaced. This is just the tip of the iceberg,

It is very clear to a lot of people what has happened, including to me.

I suggest we meet to discuss. I can assure you, this is not what I wanted to discuss, but I cannot simply walk away from this - nor will I - or others.

Once again, we can choose to work together or against each other. The choice is yours.

Donald Charles Schwartz, MBA, JD

**AFFADAVIT OF** ████████████

I, ████████████, do solemnly swear and affirm:

On or about the period of time starting on or about from February 2017 to the present time, I have had several conversations with Dave Kelvin about his meetings with Debbra Wood Schwartz. We were not meeting under any attorney confidentiality since I was not being asked to research anything, advise or function as a paralegal in any way. Mr. Kelvin informed me as follows:

Debbra Wood Schwartz was upset because her deceased husband's (Bob Schwartz) estate plan was not satisfactory to her inasmuch as it "put her in business with Don" (meaning Bob's son, Don Schwartz) and that "no one wants to be in business with Don." (The clear meaning is that Don Schwartz was a beneficiary of his father's estate plan other than the probate documents revealed and that result was unacceptable to Debbra Wood Schwartz.)

Debbra Wood Schwartz and David Ira Kelvin talked about "some paperwork" that was unacceptable in the Bob Schwartz estate and had to be redone.

Dave Kelvin is a friend and I am aware that Debbra Schwartz and he were never very close until after these meetings, at which point Dave Kelvin started hanging around Debbra Schwartz' place in the Oakland/Berkeley area – which he never did so before. (Debbra Schwartz also told Dave Kelvin that he could "stay at her home" in the Oakland-Berkeley area at "any time he was in the Bay Area." Dave lives in Clear Lake.

I was led to believe from the conversations that Debbra and Dave worked together to falsify a Trust Instrument whereby Debbra Wood Schwartz would be the sole beneficiary of a Trust and thereby knocking-out Donald Charles Schwartz as a beneficiary of his father's estate plan – and thereby destroying the original Trust instrument.

I informed Donald and Paul Schwartz of these facts (for the first time) on a telephone call during the month of February 2020.

When I asked Dave Kelvin why Debbra Wood-Schwartz and he were manipulating Bob Schwartz' estate, he did not deny it, Dave replied: "Bob would have wanted Debbra to have it all."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  

**NOTARY ATTACHED**

# EXHIBIT H

From: **Donald Schwartz** donald@lawofficedonaldschwartz.com
Subject: Schwartz Foundation
Date: October 22, 2020 at 2:28 PM
To: Margot Schwartz margotduffyschwartz@gmail.com

Hello Margot,

Do you have an attorney on the Schwartz Foundation?

If not, I will address some concerns specific to the Foundation to you.

Donald Charles Schwartz, MBA, JD

# EXHIBIT I

From: **Robert Schwartz** schwartztribe@yahoo.com 🖉
Subject: Fw: Schwartz Foundation
Date: February 10, 2021 at 5:54 PM
To: Margot Schwartz margotduffyschwartz@gmail.com

----- Forwarded Message -----
**From:** Donald Schwartz <donald@lawofficedonaldschwartz.com>
**To:** Max Meregillano <max@ksikeyboards.com>
**Cc:** Charles Schwartz <cpschwartz@ucdavis.edu>
**Sent:** Wednesday, February 10, 2021, 7:40:13 AM PST
**Subject:** Schwartz Foundation

Good Morning Max,

In furtherance of our phone conversation yesterday, please find attached the following information pertaining to the Schwartz Foundation:

(1) Santa Cruz County Superior Court Amended Petition and Order;

(2) Board of Directors Meeting Minutes from January 16 and 30, 2021; and

(3) Secretary of State Statement of Officers.

I am also sending for your records the original Articles of Incorporation and Bylaws of the Schwartz Foundation. You have previously confirmed that these documents remain fully operative since no amendments were ever in your files - and no other records of any Board Meetings exist.

Reminder: You are the Custodian of Records for the Schwartz Foundation and have been since at least 1986. You remain as such. (Margot Schwartz took all of your corporate records about one month ago and has not returned them.)

I am instructing you to maintain these records in your files.

I am also instructing you not to release these records to anyone without my written authority.

**Please let me immediately know of any and all banking information for the Schwartz Foundation. I need the name of the Bank, the Branch (if possible), the account numbers and any contact information that you may have. I would like to see the most recent bank balances on the accounts.**

Thank you.

Donald Charles Schwartz, MBA, JD
Law Office of Donald C. Schwartz
7960-B Soquel Drive, No. 291
Aptos, CA 95003
831-331-9909/Fax: 815-301-6556
donald@lawofficedonaldschwartz.com

Confidentiality, Limitation Of Use, And No Binding Effect
The preceding message contents and any attachments (collectively "Contents") are: (i) solely for the benefit of the person(s) or entity(ies) addressed (collectively "Recipient") and may not be relied upon

by any other person(s) or entity(ies) ("Others") for any purpose without specific written permission of Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz; (ii) confidential, private and contain non-disclosable information for the exclusive use of the Recipient (iii) protected by the Electronic Communications Act (18 U.S.C.§2510-2521) and or the Health Insurance Portability & Accountability Act of 1996 (42 USC 201) & its privacy rules and may also be legally privileged (including attorney-client or attorney work-product privilege), confidential, proprietary or otherwise protected by law and all downloading, photocopying, distributing or otherwise using the Contents by Others in any way is prohibited; (iv) sent for informational purposes only and unless expressly stated not intended to be an electronic signature for purposes of binding any client of or Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz to any contract or agreement under the California Uniform Electronic Transaction Act (CA Civil Code §1633.1-1633.17) and all other similar states & federal laws; (iv) not intended or written and may not be used for the purpose of avoiding federal taxes or penalties nor used to promote, market or recommend any transaction or matter addressed in the Contents (See IRS Circular 230); (v) Recipient should not save or file electronic or paper copies of the Contents with publicly accessible records, and (vi) subject to continued application of the foregoing to any subsequent retransmission, publication or disclosure.



Virus-free. www.avg.com

Schwartz Founda...01.pdf

Schwartz Founda...01.pdf

Schwartz Founda...nal.pdf

Schwartz Founda...01.pdf

Schwartz Founda...an.pdf

Schwartz Founda...an.pdf

Schwartz Founda...ed.pdf

# EXHIBIT J

From: **Sanchez, Tim** Timothy.Sanchez@morganstanley.com 📎
Subject: FW: Schwartz Foundation
Date: February 11, 2021 at 9:14 AM
To: Margot Schwartz margotduffyschwartz@gmail.com

Margot,

Here is the email that Marical received and forwarded to me that includes the items that I referenced.

Tim

Tim M. Sanchez
Vice President, Financial Advisor
Portfolio Management Director
**Morgan Stanley Wealth Management**
1999 Harrison Street, Suite 2200
Oakland, CA 94612
Phone: 510-891-5236  Cell: 510-694-2224
Fax: 925-295-4146
Timothy.Sanchez@morganstanley.com

NMLS #1265181
CA Insurance Lic. #0D45616

https://advisor.morganstanley.com/the-sbt-group

---

**From:** Sanchez, Marical (Wealth Management Field) <Marical.Sanchez@morganstanley.com>
**Sent:** Wednesday, February 10, 2021 11:49 AM
**To:** Sanchez, Tim (Wealth Management Field) <Timothy.Sanchez@morganstanley.com>; Sanchez, Francisca M (Wealth Management Field) <Francisca.Sanchez@morganstanley.com>
**Subject:** FW: Schwartz Foundation

Hello,

Is this the brother that Margot is referring to?

**Marical Sanchez**
Sr. Client Service Associate

**SBT Group**
Morgan Stanley Wealth Management
1999 Harrison Street, Suite 2200l Oakland, CA 94612
Direct: 510-891-5202l Toll Free:  800-755-1579l Fax: 510-891-0578

**From:** Donald Schwartz <donald@lawofficedonaldschwartz.com>
**Sent:** Wednesday, February 10, 2021 11:46 AM
**To:** Sanchez, Marical (Wealth Management Field) <Marical.Sanchez@morganstanley.com>
**Subject:** Fwd: Schwartz Foundation

Dear Ms. Sanchez

Dear Ms. Sanchez,

Please find the attached email to John Torpey.

Per his message I am forwarding to you.

Thanks.

Donald Charles Schwartz, JD, MBA
Chairman of the Board
President/Chief Executive Officer
Schwartz Foundation
7960-B Soquel Drive, No. 291
Aptos, CA 95003
831-331-9909/Fax: 815-301-6556
donald@lawofficedonaldschwartz.com

Confidentiality, Limitation Of Use, And No Binding Effect
The preceding message contents and any attachments (collectively "Contents") are: (i) solely for the benefit of the person(s) or entity(ies) addressed (collectively "Recipient") and may not be relied upon by any other person(s) or entity(ies) ("Others") for any purpose without specific written permission of Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz; (ii) confidential, private and contain non-disclosable information for the exclusive use of the Recipient (iii) protected by the Electronic Communications Act (18 U.S.C.§2510-2521) and or the Health Insurance Portability & Accountability Act of 1996 (42 USC 201) & its privacy rules and may also be legally privileged (including attorney-client or attorney work-product privilege), confidential, proprietary or otherwise protected by law and all downloading, photocopying, distributing or otherwise using the Contents by Others in any way is prohibited; (iv) sent for informational purposes only and unless expressly stated not intended to be an electronic signature for purposes of binding any client of or Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz to any contract or agreement under the California Uniform Electronic Transaction Act (CA Civil Code §1633.1-1633.17) and all other similar states & federal laws; (iv) not intended or written and may not be used for the purpose of avoiding federal taxes or penalties nor used to promote, market or recommend any transaction or matter addressed in the Contents (See IRS Circular 230); (v) Recipient should not save or file electronic or paper copies of the Contents with publicly accessible records, and (vi) subject to continued application of the foregoing to any subsequent retransmission, publication or disclosure.

---------- Forwarded message ---------
From: **Donald Schwartz** <donald@lawofficedonaldschwartz.com>
Date: Wed, Feb 10, 2021 at 11:14 AM
Subject: Schwartz Foundation
To: <John.Torpey@morganstanley.com>

Hello Mr. Torpey,

I just left a voice message on your "remote line."

Please be advised that Margot Schwartz and Noah Schwartz corporate officerships (if any they had) with the Schwartz Foundation have been terminated.

Please see the Statement of Information filed with the Secretary of State of the State of California and copy of void check - attached hereto.

I would like to secure a copy of any and all prior corporate authorizations for the Schwartz Foundation that Morgan Stanley has in its custody and control.

Please contact me to discuss establishing new account privileges or answer any other questions that you may have.

I look forward to working with you and thank you in advance for your anticipated cooperation.

cc: Mark Corrinet, Esq.

Donald Charles Schwartz, JD, MBA
Chairman of the Board
President/Chief Executive Officer
Schwartz Foundation
7960-B Soquel Drive, No. 291
Aptos, CA 95003
831-331-9909/Fax: 815-301-6556
donald@lawofficedonaldschwartz.com

Confidentiality, Limitation Of Use, And No Binding Effect
The preceding message contents and any attachments (collectively "Contents") are: (i) solely for the benefit of the person(s) or entity(ies) addressed (collectively "Recipient") and may not be relied upon by any other person(s) or entity(ies) ("Others") for any purpose without specific written permission of Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz; (ii) confidential, private and contain non-disclosable information for the exclusive use of the Recipient (iii) protected by the Electronic Communications Act (18 U.S.C.§2510-2521) and or the Health Insurance Portability & Accountability Act of 1996 (42 USC 201) & its privacy rules and may also be legally privileged (including attorney-client or attorney work-product privilege), confidential, proprietary or otherwise protected by law and all downloading, photocopying, distributing or otherwise using the Contents by Others in any way is prohibited; (iv) sent for informational purposes only and unless expressly stated not intended to be an electronic signature for purposes of binding any client of or Donald Charles Schwartz, Esq. and the Law Offices of Donald C. Schwartz to any contract or agreement under the California Uniform Electronic Transaction Act (CA Civil Code §1633.1-1633.17) and all other similar states & federal laws; (iv) not intended or written and may not be used for the purpose of avoiding federal taxes or penalties nor used to promote, market or recommend any transaction or matter addressed in the Contents (See IRS Circular 230); (v) Recipient should not save or file electronic or paper copies of the Contents with publicly accessible records, and (vi) subject to continued application of the foregoing to any subsequent retransmission, publication or disclosure.

 Virus-free. www.avg.com

If you would like to unsubscribe from marketing e-mails from Morgan Stanley Wealth Management, you may do so here . Please note, you will still receive service e-mails from Morgan Stanley Wealth Management.

you will still receive service e-mails from Morgan Stanley Wealth Management.

You may have certain rights regarding the information that Morgan Stanley collects about you. Please see our Privacy Pledge https://www.morganstanley.com/privacy-pledge for more information about your rights.

To view Morgan Stanley's Client Relationship Summary and other important disclosures about our accounts and services, please visit www.morganstanley.com/disclosures/account-disclosures



Schwartz
Founda…01.pdf



SCHWARTZ FOUNDATION/ ATTN. MARGOT DUFFY SCHWARTZ          2554

SCHWARTZ FOUNDATION/ ATTN.MARGOT DUFFY SCHWARTZ          2554





## California Secretary of State
### Electronic Filing

# Corporation - Statement of Information

Entity Name: SCHWARTZ FOUNDATION

| | |
|---|---|
| Entity (File) Number: | C0967388 |
| File Date: | 01/31/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GQ20115 |

**Detailed Filing Information**

1. Entity Name:

   SCHWARTZ FOUNDATION

2. Business Addresses:

   a. Street Address of Principal Office in California:

   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

   b. Mailing Address:

   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

3. Officers:

   a. Chief Executive Officer:

   Donald Charles Schwartz
   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

   b. Secretary:

   David Richard Schwartz
   7960-B Soquel Drive, No. 291
   Aptos, California 95003
   United States of America

Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.

Document ID: GQ20115

Case: 23-50372    Doc# 22    Filed: 05/22/23    Entered: 05/22/23 08:38:41    Page 70 of 78



# California Secretary of State
## Electronic Filing

Officers (Cont'd):

   c.  Chief Financial Officer:

Charles Phinehas Schwartz, III
7960-B Soquel Drive, No. 291
Aptos, California 95003
United States of America

4.  Agent for Service of Process:

Donald Charles Schwartz
7960-B Soquel Drive, No. 291
Aptos, California 95003
United States of America

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:   Donald Charles Schwartz

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GQ20115

# EXHIBIT K

From: **max management-engineering.com** <max@management-engineering.com>
Date: Tue, Feb 16, 2021 at 1:29 PM
Subject: Cease and desist Order
To: Margot Schwartz <margotduffyschwartz@gmail.com>

Do I stop paying Temitayo for her services and inform her to stop working?

# MARK STEVEN CORRINET
## ATTORNEY AT LAW

(ADMITTED IN CALIFORNIA STATE & FEDERAL)
(ADMITTED IN OREGON FEDERAL ONLY)

February 10, 2021

Max Meregillano
Custodian of Records
Schwartz Foundation
14665 Washington Avenue, No. 26
San Leandro, CA 94578

Re:    Schwartz Foundation

Dear Mr. Meregillano,

Please be advised that I have been retained by the Schwartz Foundation to notify
you that the Board of Directors of the Schwartz Foundation has terminated any and all
officer positions purportedly held by Margot Schwartz and Noah Schwartz. They have
been instructed to return all books and records of the Schwartz Foundation to you at your
office address as set forth above.

You are hereby instructed to cease and desist from engaging any further corporate
activities with Margot Schwartz and Noah Schwartz other than to receive the books and
records that they return to you.

If they do return books and records to you, please keep an inventory of what you
receive.

Please feel free to contact me at the above contact information or Donald Charles
Schwartz at the following address going forward as to Schwartz Foundation matters:

Donald Charles Schwartz
Chairman of the Board/President/Chief Executive Officer
7960-B Soquel Drive, No. 291
Aptos, CA 95003
831-331-9909/831-291-7080
Email: triallaw@cruzio.com

2210 NW BAYSHORE LOOP ● WALDPORT ● OREGON 97394
(541) 563-5028 ● EMAIL: CORRINETLAW@AOL.COM

donald@lawofficedonaldschwartz.com

Thank you for your anticipated cooperation.

Sincerely

Mark Steven Corrinet
Attorney a law

cc:     Donald Charles Schwartz, Esq.
        Chairman of the Board
        Schwartz Foundation



**California Secretary of State**
Electronic Filing

# Corporation - Statement of Information

Entity Name: SCHWARTZ FOUNDATION

| | |
|---|---|
| Entity (File) Number: | C0967388 |
| File Date: | 01/31/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GQ20115 |

**Detailed Filing Information**

1. Entity Name:

   SCHWARTZ FOUNDATION

2. Business Addresses:
   a. Street Address of Principal
      Office in California:

      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

   b. Mailing Address:

      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

3. Officers:
   a. Chief Executive Officer:

      Donald Charles Schwartz
      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

   b. Secretary:

      David  Richard Schwartz
      7960-B Soquel Drive, No. 291
      Aptos, California 95003
      United States of America

Document ID: GQ20115

Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.



# California Secretary of State
## Electronic Filing

Officers (Cont'd):

   c.  Chief Financial Officer:

                         Charles Phinehas Schwartz, III
                         7960-B Soquel Drive, No. 291
                         Aptos, California 95003
                         United States of America

4.  Agent for Service of Process:

                         Donald Charles Schwartz
                         7960-B Soquel Drive, No. 291
                         Aptos, California 95003
                         United States of America

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:    Donald Charles Schwartz

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*



Document ID: GQ20115

1

## PROOF OF ELECTRONIC SERVICE

I declare that I am employed in the County of Contra Costa, State of California. I am over the age of eighteen years at the time of service and not a party to the within cause. My employment address is 1646 North California Boulevard, Suite 250, Walnut Creek, California 94596-4170.

On June 14, 2021, I electronically served copies of the following document(s) entitled:

**FIRST AMENDED COMPLAINT FOR RELIEF UNDER CORPORATIONS CODE SECTION 5617, INCLUDING DECLARATORY AND INJUNCTIVE RELIEF**

### Service List

| | |
|---|---|
| Donald C. Schwartz, Esq.<br>**LAW OFFICES OF DONALD C. SCHWARTZ**<br>7960-B Soquel Drive, No. 291<br>Aptos, CA 95003<br>Tel.: (831) 331-9909<br>**Email**: donald@lawofficedonaldschwartz.com | *Attorney for Defendants*<br>DONALD C. SCHWARTZ, MICHAEL L. OSTERBERG, PAUL D. SCHWARTZ, CHARLES P. SCHWARTZ, III, DAVID RICHARD SCHWARTZ, STEVON S. SCHWARTZ |
| Daniel J. Russo<br>**MAAS & RUSSO LLP**<br>521 Georgia St<br>Vallejo, CA 94590-6006<br>Tel.: 707-644-4004<br>**Email**: law@mortonrusso.com;<br>danny49mr@gmail.com; vicki@mortonrusso.com | ***Limited Scope*** *Attorneys for Defendants*<br>DONALD C. SCHWARTZ, MICHAEL L. OSTERBERG, PAUL D. SCHWARTZ, CHARLES P. SCHWARTZ, III, DAVID RICHARD SCHWARTZ, STEVON S. SCHWARTZ |

☒ **BY NOTICE ELECTRONIC FILING:** I electronically filed the document(s) by submitting an electronic version of the document(s) to **FIRST LEGAL NETWORK, LLC**, through the user interface at https://www.firstlegal.com/. Participants in the case who have consented will be served through the user interface at https://www.firstlegal.com/. Participants who have not consented will be served by mail or by other means permitted by the court rules.

☒ **STATE.** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 14, 2021, at Walnut Creek, California.

_____
Dina Lewis

#4838-8220-3620.2

Case No 21CV00416

PROOF OF SERVICE